# Bradlee & Co. *versus* Whitney & Kemmerer.

1. A writ of error to the Supreme Court, on exceptions filed to the report of a referee to whom a cause has been referred, without a jury, under the Act of May 14th, 1874, brings up only questions of law. The court cannot go behind the findings of fact by the referee, except where the assignment of error is such as could have been heard and determined if the trial had been before a jury. The court will not, in the absence of fraud, consider the weight and conflict of the evidence or the veracity of the witnesses.

2. While it is true, as a general rule, that where there is no knowledge or notice that the property involved belongs to another, the rights

of a purchaser will be protected when he deals with an agent who upon his own assertion is believed to be a principal; yet where the transaction exhibits upon its face what would put an ordinarily prudent person upon inquiry, he will, as against the innocent owner, be affected with notice of that which through proper inquiry he would have ascertained.

3. The circumstances of this case held to have been such as to put the purchasers upon inquiry as to who was the owner of certain coal purchased by them, and their payment of the price to the broker who negotiated the sale, held to have been no defence to an action for the same by the real owners and sellers of the coal.

January 19th, 1885: Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, GREEN and CLARK, JJ. STERRETT, J., absent.

ERROR to the Court of Common Pleas, No. 4, of *Philadelphia county*: Of January Term, 1884, No. 333.

Amicable action, submitted to a referee without the intervention of a jury, under the Act of May 14th, 1874, in which W. B. Whitney and M. S. Kemmerer, trading as Whitney & Kemmerer, were plaintiffs, and Thomas F. Dixon and William Gerhard, trading as Bradlee & Co., were defendants, to recover the price of a cargo of coal.

The referee (S. Davis Page, Esq.), found the following facts :   The plaintiffs were coal dealers doing business in Philadelphia, and supplying their trade with coal shipped from the mines to Trenton, New Jersey, and from thence directly to purchasers.   The defendants were manufacturers at Gunners' Run.   A. J. Cohen was a coal broker having an office at 322 Walnut street, Philadelphia, and was known to the plaintiffs as without means, while Mr. Gerhard, the active member of the defendant firm, knew that he had lately failed in other business.   In the latter part of October, 1879, Cohen told the defendants that he had lately started an office for the sale of coal, and showed them a postal card containing his office address, and printed so as to be used for orders for all kinds of coal.   Thereupon they gave him an order for a boat load at $3.40 a ton.   He represented to the plaintiffs that he usually obtained his coal through Bruner & Co., but as they could not fill all his orders, he wanted plaintiffs to fill this and others. Plaintiffs agreed to sell to any of his customers found satisfactory upon inquiry, to bill and ship to them directly, and to pay Cohen his commissions when the bills were paid.   After finding that the defendants' standing warranted it, the plaintiffs, on November 3d, 1879, consigned to them a boat load of coal.   This was subsequently received by the defendants, who receipted for it on the back of the bill of lading.   The bill of lading and receipt were as follows (the defendants being called therein " Bodle & Co." by mistake) :

[Bradlee & Co. v. Whitney & Kemmerer.]

S. D. P.
No. 2.

WHITNEY, McCREARY & KEMMERER,
Coal Merchants.
OFFICES: { 187 South Second street, Philadelphia,
And Mauch Chunk.
CASH ADVANCED BY

Shipment.

TRENTON, N. J., Nov. 3d, 1879.
No. 136.

Received from WHITNEY, McCREARY & KEMMERER, on board Canal Boat 823, whereof I am Master, 97 Tons, 15 cwt., Upper Lehigh Broken Coal, which I promise to deliver without unnecessary delay, (the risk of navigation excepted,) to Bodle & Co., or order, at Gunners Run, Philada, paying freight thereon at the rate of $_____ per ton. Tolls and Towing paid by J. A. Anderson, Supt.

•C. SCHAIBLE, Master.

Capt. to hold Guy.

(Indorsed.)
T. Cwt.
Rec'd 97—15—Upper Lehigh Broken Coal as per receipt.    BRADLEE & Co.

The plaintiffs entered the sale in their books to the account of the defendants, and a few days later sent them a bill for the same, which, however, they never received. Soon after the receipt of the coal, the defendants, at Cohen's request, gave him a check therefor, at $3.40 per ton, under date of November 11th, 1879, at their works, Cohen rendering a bill on a piece of paper (without heading), found in their counting-room, and receipting for the money in the defendants' receipt book. Shortly after this Cohen absconded, without making any return of the money to the plaintiffs.

The plaintiffs made no personal demand of payment for the coal until the latter part of December, 1879, when for the first time they learned that the defendants had paid Cohen, and that they declined to recognize the plaintiffs as the sellers.

There was no doubt but that plaintiffs and defendants both acted in entire good faith. The defendants received the coal as coming from Cohen, and did not concern themselves with any inquiry as to his authority over it, nor did they notice the absence of any indicia of his ownership of the coal during the transaction. They claimed that they supposed they were dealing with him as principal.

The plaintiffs, on the other hand, claimed to have regarded Cohen simply as a broker or middle-man working for his commissions, and contended that they would not have trusted him either as principal or agent.

[Bradlee & Co. v. Whitney & Kemmerer.]

Upon this state of facts, after reviewing the authorities the referee found for the plaintiffs for the full amount of their claim, with interest and costs.

To this report the defendants excepted, because the referee failed to find from the evidence, (1) that the defendants pur-.chased the coal from Cohen and paid him for it, and had not given the plaintiffs any order for it; or (2) that plaintiffs had been negligent in not giving defendants notice that they were the sellers of the coal until Cohen had absconded; or (3) that plaintiffs had constituted Cohen their agent; and finally, because the referee found for the plaintiffs and awarded to them the amount of their claim, with interest and costs, and directed a judgment to be entered against the defendants.

The referee filed a supplementary report dismissing these exceptions, whereupon judgment was entered for the plaintiffs, in accordance with the referee's finding. The defendants took this writ, assigning for error the dismissal of their exceptions and the said judgment.

*John S. Gerhard*, for plaintiffs in error.—The question is, who accredited Cohen and put him in the way of committing the fraud. We claim the evidence shows that plaintiffs below did by furnishing him the coal, and failing to advise the defendants below of their relation to the transaction. When one of two innocent persons must suffer by the fraud or negligence of a third, whichever of the two has accredited him ought to bear the loss: Mundorff *v.* Wickersham, 13 P. F. S., 89; Aull *v.* Colket, 2 W. N. C., 323; Merchants Bank *v.* Bank of the United States, 4 Rawle, 322. The defendants below dealt *bona fide* with Cohen as principal without knowledge of his agency, and having paid him they have a right to set off this payment against any claim by Whitney & Kemmerer: Frame *v.* Wm. Penn Coal Co., 1 Out., 309; Story on Agency, §§ 420, 421; 2 Kent. Com., 632.

*Silas W. Pettit* and *John R. Read,* for defendants in error.— Defendants below had full notice, from the known insolvency of Cohen, and from the character of the card which he handed them, that he was merely a broker; and when they received the coal they accepted it after full notice of the contents of the bill of lading, which showed plainly that the coal was the property of Whitney & Kemmerer, and in the custody and under the control of their agent, the master of the canal boat. Even if Bradlee & Co. supposed Cohen to be a broker with authority to sell them on credit, they had no ground for the presumption that he was authorized to collect the price: Seiple *v.* Irwin, 6 Casey, 513. Cohen was never entrusted with

possession of the coal, and the presumption was, therefore, that he was a mere broker, not a factor, and that he had no authority to collect money for the owners and sellers of the coal: Crosby v. Hill, 39 Ohio St., 100.

Mr. Justice CLARK delivered the opinion of the court, February 23d, 1885.

By agreement of the parties in this case, trial by jury was dispensed with, and the matters at issue were submitted to the decision of a referee, learned in the law, under the provisions of the Act of 14th May, 1874. The questions now presented for our consideration arise upon exceptions filed to the report of the referee. It has been frequently held in this court that a writ of error, in such case, brings up only questions of law. The court cannot go behind the findings of fact by the referee, except where the assignment of error is such as could be heard and determined if the trial had been according to the course of the common law—before a jury: Jamison v. Collins, 2 Norris, 359; Lee v. Keys, 7 Id., 175; Brown v. Dempsey, 14 Id., 243. If the evidence is relevant and proper, and the findings of fact are reasonably inferred therefrom, we must, in the absence of fraud, accept the report as correct and true; we cannot consider the weight or the conflict of the evidence, or the veracity of the witnesses; this is the proper office of the referee, who performs the double function of court and jury. Such of the assignments of error as are directed solely to the facts must therefore be dismissed. We are of opinion, however, that the conclusions of the referee, in this respect, are fully justified by the evidence, and that in his application of the rules of law to the facts as found, he is also clearly correct. The presentation of the case in his report is so full and satisfactory that any extended discussion of the matters involved must result in a useless repetition. We will, therefore, but briefly advert to the main features of the case.

The plaintiffs below were extensively engaged as dealers in anthracite coal, in the city of Philadelphia; the coal with which they supplied their trade was shipped from the mines to Trenton, New Jersey, and was thence directly consigned to purchasers. The defendants below were manufacturers of chain and other iron goods at Gunners Run, in the city of Philadelphia. In the latter part of October, 1879, one A. J. Cohen, who was a coal broker, having an office at No. 322 Walnut street in that city, solicited and obtained from the defendants an order for a boat load of white ash coal. Subsequently Cohen asked the plaintiffs to fill this and other orders for him; the plaintiffs, knowing Cohen's insolvent condition, agreed to sell to any of his customers who upon inquiry

[Bradlee & Co. v. Whitney & Kemmerer.]

were found satisfactory; to bill and ship the coal to them directly, and to pay Cohen a commission on sales when the bills were paid. Having ascertained the defendants' standing and responsibility, the plaintiffs, on the 3d November, 1879, consigned to them a boat load of coal, weighing ninety-seven tons and upwards. By some blunder the consignees were named in the bill of lading as "Bodle & Co., Gunners Run, Philadelphia," but the cargo was in due time received by Bradlee & Co., who receipted therefor on the back of the bill of lading. The bill, with the indorsement referred to, is in the following form:

S. D. P.
No. 2.

Shipment.

TRENTON, N. J., Nov. 3d, 1879.

No. 136.

Received from WHITNEY, McCREARY & KEMMERER, on board Canal Boat 823, whereof I am Master, 97 Tons, 15 cwt., Upper Lehigh Broken Coal, which I promise to deliver without unnecessary delay, (the risk of navigation excepted,) to Bodle & Co., or order, at Gunners Run, Philada, paying freight thereon at the rate of $_____ per ton. Tolls and Towing paid by J. A. Anderson, Supt.

C. SCHAIBLE, Master.

Capt. to hold Guy.

(Indorsed.)
T. Cwt.
Rec'd 97—15— Upper Lehigh Broken Coal as per receipt.          BRADLEE & Co.

WHITNEY, McCREARY & KEMMERER, Coal Merchants. OFFICES: { 137 South Second street, Philadelphia, And Mauch Chunk.

CASH ADVANCED BY

On the 11th November, 1879, Cohen called for and received from Bradlee & Co. the price of the coal, giving his receipt therefor, and shortly afterwards absconded.

The referee finds: "The plaintiffs had never in any way or at any time given Cohen authority to act as their agent, nor authorized him to collect any money for them—they had agreed with him to sell to whichever of his customers he might designate whom they upon inquiry found satisfactory; in pursuance of that undertaking, after inquiry, they had so undertaken to sell to the defendants, not to Cohen. The defendants did not know that Cohen was acting under any agreement with the plaintiffs, but assumed that he was acting as the owner of the coal, without inquiry." Both parties, however, acted in the utmost good faith.

[Bradlee & Co. *v.* Whitney & Kemmerer.]

It is certainly true, as a general rule, that where there is no knowledge or notice that the property involved belongs to another, the rights of a purchaser will be protected when he deals with an agent who, upon his own assertion, is believed to be the principal; it is an elementary principle of law applicable to such a case that when one of two innocent persons must suffer by the fraud of a third, he who gave the transgressor the means of doing wrong must bear alone the consequences of the act: Mundorff *v.* Wickersham, 13 P. F. S., 87; Penn. R. R. Co.'s Appeal, 5 Norris, 80; Burton's Appeal, 12 Id., 214. But where the transaction exhibits upon its face what would put an ordinarily prudent purchaser upon inquiry he will as against the innocent owner be affected with notice of that which through proper inquiry he would certainly have known, for it is a like elementary principle that when a loss must fall upon one of two innocent parties, it must be borne by the party whose negligence or lack of prudence and forethought may have occasioned the loss.

The plaintiffs, by no act of theirs, held Cohen out to the world as the owner; they did not intrust him with the possession of the subject of sale; the indicia of their ownership accompanied the cargo; they consigned the coal, not in Cohen's name, but in their own. The sale was journalized on the plaintiffs' books to the account of the defendants, and a few days later a bill was rendered, and transmitted by mail directly to the defendants, which it seems they never received. The plaintiffs appear to have done all they could reasonably be required to do; there was nothing omitted on their part which common prudence or forethought, or even suspicion, might have suggested.

The defendants knew that Cohen was without means, and the fact that he was soliciting orders for all sorts of coal to be delivered as desired, in view of his known insolvency, was certainly suggestive to them that he was not acting on his own account. When the bill of lading was exhibited to them they could plainly see that neither the consignor nor consignee corresponded with the parties to their contract with Cohen, and that if the consignment was to them, Cohen was not filling their order from the product of his own mine, or from any other source of supply under his control. They received the coal, however, receipted for it upon the bill of lading, removed it to their works, and used it. When Cohen called for the money, before the expiration of the customary period of credit, they paid him without question. A reasonable degree of prudence would, we think, have led the defendants to inquiry as to the real ownership of this coal, and therefore the transaction plainly implies notice of that which inquiry

would certainly have devoloped, namely, that Cohen was sim‑ ply a broker, and had no authority to receive or receipt for the money.

It is certainly true, that as a broker, Cohen was .in some sense the agent of the plaintiff, and if he had been clothed with apparent authority over the property, if the coal had been in his control or possession, or if the bill of lading had been in his name, the defendants, as bona fide purchasers from the apparent owner, would have been justified in supposing that he was the owner, and would have been protected in their payment to him; but in the absence of any indicia of ownership, or apparent ownership, they cannot, under the facts of the case or against the plaintiffs, be regarded as inno- cent purchasers. The case is clearly distinguishable on these grounds from Frame *v.* West Penn Coal Co., 1 Out., 309.

The judgment is therefore affirmed.