SOUTHERN MARYLAND R. CO. v. J. M. MOYER.

ERROR TO THE COURT OF COMMON PLEAS NO. 1 OF PHILA-
DELPHIA COUNTY.

Argued April 1, 1889—Decided April 15, 1889.
[To be reported.]

1.  Where a cause is submitted to a referee under the act of May 14, 1874, P. L. 166, the referee has exclusive jurisdiction to pass upon exceptions to his report, and if either party neglect to have exceptions noted to the rulings, he is held to have acquiesced therein.
2. A writ of error, in such proceeding, brings up only questions of law, and this court cannot review the findings of fact by the referee except where the assignment of error is such as could have been heard and determined if the trial had been before a jury according to the course of the common law.
3. Nor can this court consider the weight or the conflict of the evidence, or the veracity of witnesses: if the evidence is relevant and proper and the findings of fact are reasonably to be inferred therefrom, in the absence of fraud the report of the referee must be accepted as true and correct.

Before STERRETT, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 150 January Term 1889, Sup. Ct.; court below, No. 14 September Term 1879, C. P. No. 1.

On August 2, 1879, a summons in foreign attachment was issued by J. M. Moyer against Samuel S. Smoot, as defendant, and the Southern Maryland Railroad Company, as garnishee. The writ was served on the garnishee on August 4, 1879, and returned, nihil habet, as to the defendant.

On June 17, 1880, judgment was entered against the defendant for want of an appearance, and afterwards liquidated at the sum of $234,000.   On May 22, 1886, interrogatories and rule on the garnishee to answer were filed and served, and on August 17, 1886, in default of answers to the interrogatories, judgment was entered against the garnishee for the sum of $234,179.

On October 27, 1886, a fieri facias having been issued against the garnishee and returned, nulla bona, the plaintiff and the garnishee filed the following agreement:

" Judgment having been heretofore entered in the above case, against the said garnishees for the sum of $234,179 in favor of the plaintiff, now it is hereby agreed that the said court shall appoint John H. Seltzer, Esq., referee, under the act of May 14, 1874, to hear all the evidence of the respective parties and to ascertain what amount, if any, was due from the said garnishees to the said defendant on the date of the service of the writ in the above case upon them, whether it should be reduced in amount or set aside for want of consideration, and to enter judgment as provided by said act."

The report of the referee, filed on April 16, 1887, showed inter alia, that, after the testimony had been taken before him, the garnishee by its attorney had filed with him eight several requests to report findings of fact and of law.   These requests, as well as other matters of fact and law arising, were passed upon by the referee, who concluded his report as follows:

1. The referee therefore finds that the plaintiff is entitled to have execution for the full amount of his judgment, but as the judgment heretofore entered against the garnishee is a general one, it needs to be reformed and amended so as to conform to the form of judgment against a garnishee as laid down in Layman v. Beam, 6 Wh. 181, 186.

2. The referee therefore finds and adjudges that there was in the hands of the garnishee, to wit, the Southern Maryland Railroad Company, at the date of service of the said attachment on said garnishee, to wit, on the fourth day of August, A. D. 1879, belonging to the said Samuel S. Smoot, to wit, $125,000 of the first mortgage bonds of the said company; $100,000 of the second mortgage bonds of the said company, and $125,000 of the capital stock of said company; and that

the plaintiff should have execution on his said judgment against the said Samuel S. Smoot, the defendant, of the $125,000 of the said first mortgage bonds, of the $100,000 of the second mortgage bonds and of $125,000 of the capital stock, of said company and attached in the hands of the garnishee, the said Southern Maryland Railroad Company, as may satisfy the judgment of the plaintiff against the said defendant with interest and costs; and, if the said the Southern Maryland Railroad Company refuse or neglect, on demand by the sheriff, to produce the same, then the said judgment to be levied of the Southern Maryland Railroad Company, its goods, lands and chattels according to law, as in the case of a judgment against it for its proper debt, and that the said Southern Maryland Railroad Company be therein discharged as against the said Samuel S. Smoot, the defendant, for the sum so attached and levied of the defendant and money in his hands.

And the referee also adjudges that the judgment heretofore entered in this case be reformed and amended by substituting the judgment now found by the referee in its place and stead.

To this report of the referee, the garnishee filed thirty-nine exceptions, relating chiefly to the referee's findings of fact.

On May 26, 1887, the parties by counsel met before the referee pursuant to notice given for a hearing upon said exceptions. The counsel for the garnishee objected to the jurisdiction of the referee to pass upon the exceptions, contending that the jurisdiction was exclusively in the Court of Common Pleas. The referee, however, ruled that the jurisdiction was in himself alone as referee, overruled all the exceptions filed to his report, and ordered judgment to be entered in accordance therewith. No exceptions were noted to the rulings of the referee.

Judgment having been entered as directed, the garnishee took this writ, filing numerous assignments of error, one class alleging error in refusing to find as requested by the garnishee, and another, alleging error in overruling the various exceptions filed to the referee's report.

*Mr. Samuel Gustine Thompson*, for the plaintiff in error.

*Mr. Amos Briggs*, for the defendant in error.

OPINION, MR. JUSTICE STERRETT:

In its legal effect, and for all purposes of review here, the judgment entered on the report of the learned referee, under the provisions of the act of May 14, 1874, P. L. 166, is substantially the same as a judgment of the court itself in a case submitted to it, without jury trial, under the act of April 22, 1874, P. L. 109.

The practice under these acts has been fully considered in several cases, among which are Jamison v. Collins, 83 Pa. 359; Lee v. Keys, 88 Pa. 175; Brown v. Dempsey, 95 Pa. 243; Bradlee v. Whitney, 108 Pa. 362. In view of these and other deliverances of this court on the subject, the practice should have been long since considered settled. The case first above cited was a submission to the court under the act of April 22d, supra. Referring to the third section of the act, it was there said that on a writ of error to the judgment, " We can hear and determine only questions of law arising upon bills of exception to the rulings of the judge relating to the evidence or to the law of the case. We cannot go behind his findings of fact, except where in a common law trial before a jury the assignment of error is such as can be heard and determined by us. The writ of error brings up no question as upon a new trial. The law provides for exceptions to the findings of facts," etc. The other act directs that the referee shall, in all things pertaining to the trial and decision of the case, have the powers and perform the duties that would belong to the court under a like submission. " The decision, with what pertains to it, shall be filed of record in the case, and shall in like manner and to the same extent be subject to exceptions and writ of error or appeal, as in cases submitted in like manner to the court." It was accordingly held in Lee v. Keys, supra, that the practice is substantially the same under both acts, especially in writs of error. In both, the filing of exceptions to the decision is contemplated, and after a hearing a decision by the court or referee, as the case may be, on those exceptions. In cases submitted to a referee, he has exclusive jurisdiction to hear and pass upon exceptions to his report, just as the judge has in cases submitted to the decision of the court. If either party is dissatisfied with the rulings thereon, he should request that an exception be noted. If he neglects to do so, he should be considered as having acquiesced in the decision.

In Bradlee v. Whitney, supra, our brother CLARK, referring to the act of May 14, 1874, says: " It has been frequently held in this court that a writ of error in such case brings up only questions of law. The court cannot go behind the findings of fact by the referee, except where the assignment of error is such as could be heard and determined if the trial had been, according to the course of the common law, before a jury. If the evidence is relevant and proper and the findings of fact are reasonably inferred therefrom, we must, in the absence of fraud, accept the report as correct and true. We cannot consider the weight or the conflict of the evidence, or the veracity of the witnesses: this is the proper office of the referee, who performs the double function of court and jury. Such of the assignments of error as are directed solely to the facts must therefore be dismissed."

The writ of foreign attachment in this case was duly executed and served on the garnishee, plaintiff in error, August, 4, 1879, and as to Mr. Smoot, the defendant therein, the sheriff's return was " nihil habet." The cause was so proceeded in that in June, 1880, judgment was taken against the defendant, Smoot, for want of appearance, and afterwards liquidated at $234,000. In May, 1886, interrogatories were filed, and the railroad company, garnishee, was ruled to answer. In August, following, judgment was entered against the garnishee, in default of an answer, for $234,179. Afterwards, on October 27, 1886, the following agreement of reference was executed and filed, viz.: " Judgment having been heretofore entered in the above case against the garnishee for the sum of $234,179 in favor of plaintiff, now it is hereby agreed that the said court shall appoint John H. Seltzer, Esq., referee, under the act of May 14, 1874, to hear all the evidence of the respective parties and to ascertain what amount, if any, was due from said garnishee to the said defendant, on the date of the service of the writ in the above case upon them, whether it should be reduced in amount or set aside for want of consideration, and to enter judgment as provided by said act."

Pursuant to his appointment and notice to the parties, the referee proceeded to discharge his duties, and having fully heard the parties, etc., reported in favor of plaintiff below and against the garnishee. Exceptions to the report, thirty-nine

in number, were filed by the garnishee. These exceptions were overruled by the referee, and on May 26, 1887, a modified judgment, in proper form, was entered against the garnishee.

In his report on the exceptions above referred to, the learned referee says the garnishee appeared by counsel, denied his jurisdiction to review and dispose of the exceptions, and declined to argue the same before him. The referee, however, rightly assuming that he, and not the Court of Common Pleas, had exclusive jurisdiction of the exceptions, proceeded to consider them, and having overruled them, final judgment, in due form, as above stated, was entered against the plaintiff in error. The supplemental report of the referee, overruling the garnishee's exceptions and directing judgment to be entered on his report, was not excepted to by either party. The specifications of error are all based on exceptions to the first report of the referee.

The proceedings, leading up to the entry of the final judgment, have been referred to at considerable length for the purpose of showing the precise position of the case as now presented to us.

From what has been said, it is very evident that the main, and in fact the controlling question, submitted to the referee was, whether the railroad company, garnishee, on August 4, 1879, the day on which the attachment was served, had in its possession and under its control any money, securities, or property of any kind, belonging to Samuel S. Smoot, the defendant in that proceeding. That was a question of fact for the referee, to be determined by him from the evidence. If he found that the garnishee at that date had any such money, securities, or property of any kind, belonging to Mr. Smoot, it was his further duty to ascertain how much, and if securities or property, of what they consisted, and to direct judgment, in due form, to be entered.

He found from the evidence, and so reported, that at the time of the service of the attachment on plaintiff in error, there was in its hands belonging to defendant, Mr. Smoot, $125,000 of the first mortgage bonds, $100,000 of the second mortgage bonds of the company, and $125,000 of the capital stock of the company, etc.; that said stock and bonds were duly attached

in the hands of said company, and that plaintiff below is entitled to have execution on his judgment against Smoot of said stock and securities, or so much thereof as will satisfy said judgment, interest, and costs. He directed judgment accordingly to be entered against the garnishee; and, if the said garnishee refuse or neglect, on demand of the sheriff, to produce said stock and securities, then said judgment to be levied of the said corporation, its goods, lands, and chattels according to law, as in the case of a judgment against it for its own proper debt, etc. If the finding of the referee, as to the stock and securities in the hands of the garnishee, is correct, there can be no question as to the correctness and validity of the judgment. We find nothing in the record to warrant us in disturbing the finding of the referee. It appears to have been based upon sufficient evidence.

It was contended, however, before the referee, that whatever interest Smoot had in the stock and securities in question, prior to the 24th July, 1879, was on that day assigned and transferred, for a valuable consideration, to E. N. Darling, and hence he had parted with all his interest before the attachment was served on the garnishee. But, unfortunately for that position, the referee found upon evidence that was quite sufficient, that the alleged assignment was not made until two weeks or more after service of the attachment. Smoot himself was called and examined as a witness on that subject. He testified, in substance, that the assignment was written and signed by himself in his parlor at the Continental Hotel some time between the 15th and 20th of August, 1879. He says, "I will state briefly how it came to be written: Mr. Linville, Mr. Wile, Mr. Folsom, and Col. Darling told me about this suit of Mr. Moyer, and Mr. Hart was here from Washington, claiming to be part owner of the stock, and that he was going to get out an injunction, and that I had better make an assignment of the stock. Mr. Darling said I had better do it, or this whole thing would be busted, and we cannot do anything. So I drew that assignment and dated it on the 24th day of July, and signed it. It was really made anywhere from the 15th to the 20th of August. I antedated it; I had to do it," etc. There was also evidence tending to show that the stock and bonds were afterwards delivered. It is no answer to say that the evidence was conflict--

ing, and that the weight of it was the other way.  That was a matter solely for the referee.  We have no right, even if we were so disposed, to reverse his findings of fact on any such ground as that.

Waiving any technical objections that might be urged against plaintiff in error, we are of opinion that the learned referee's findings of fact, as well as his conclusions of law, were fully warranted, and that there is nothing in the record that would justify a reversal of the judgment.

It would be a useless waste of time to consider, specially, numerous minor points presented by the specifications of error. In view of the main and controlling facts, to which reference has already been made, they are unimportant.

Judgment affirmed.