COMMONWEALTH v. M. HULINGS ET AL.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON
PLEAS OF DAUPHIN COUNTY.

Argued June 4, 1889—Decided June 28, 1889.

1. Where a cause is submitted to the decision of the court, under the act of April 22, 1874, P. L. 109, the findings of fact are not reviewable, and the Supreme Court can hear and determine only questions arising upon bills of exception to the rulings of the trial judge, relating to the evidence, or to the law.*

(a) Hulings, Simcox and Stone were the owners of a ferry franchise, and in 1878, Simcox, for himself and Hulings, agreed to aid in establishing a toll-bridge company, and in consideration of one fifth of its capital stock, to discontinue the ferry when the bridge was opened, reserving the right to re-establish if the bridge should be destroyed in two years.

(b) The toll-bridge company opened their bridge in 1879, and kept it open until its destruction in February, 1881, during which time the ferry was not operated, the boats and rope being removed; but the ferry was re-opened soon after the bridge was destroyed, and in December, 1886, a proceeding by quo warranto was instituted to test the right to continue the use of the franchise.

2. In such case, it was not error for the court to hold that the delay to institute the quo warranto proceedings for over five years after the reopening of the ferry, and the fact, inter alia, that there was nothing in the case to show that since then it had failed to supply the needs of the public, entitled the defendants to judgment in their favor.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 26 May Term 1889, Sup. Ct.; court below, No. 81 January Term 1887, C. P.

On December 6, 1886, the relation of William S. Kirkpatrick, Attorney General, as amended by leave of court on May 9, 1887, gave the court to understand and be informed:

" That M. Hulings, S. Simcox, Roy Stone, C. W. Mackey, J. M. Dickey, C. W. Gilfillan, R. G. Lamberton and W. J. Welsh, for the space of one year last past and more, have claimed to use, and yet do claim to have and use without any lawful war-

---

* See Southern Md. R. Co. v. Moyer, 125 Pa. 506.

Statement of Facts.

rant within this commonwealth, the franchises, liberties and privileges following, to wit:

"That the said defendants claim to have and use the right to establish and maintain a public ferry over the Allegheny river, at or near the mouth of the Big Scrubgrass creek, in Venango county, and to levy and collect tolls from all persons using the same, under and by virtue of the provisions of an act of the general assembly, approved the 11th day of January, A. D. 1867, P. L. 100, entitled, 'An act to establish a ferry over the Allegheny river at or near the mouth of Big Scrubgrass in Venango county.' . . . . .

"That on the 23d day of September, A. D. 1878, and for some time prior thereto, the aforesaid M. Hulings and S. Simcox maintained and operated a public ferry over the said Allegheny river, at or near the mouth of the Big Scrubgrass creek, in Venango county, claiming the right so to do as being the assignees of the franchises, rights and privileges granted to the aforesaid John A. Canan, in and by the act of assembly aforesaid.

"That on the 23d day of September, A. D. 1878, the aforesaid C. W. Gilfillan, C. W. Mackey, W. J. Welsh, J. M. Dickey and R. G. Lamberton (they having previously made application to the governor of the commonwealth, desiring to be incorporated into a body politic and corporate by the name of the Bullion Bridge Company, for the purpose of constructing and maintaining a bridge over the Allegheny river in Venango county, at or near the station of Scrubgrass), did enter into an agreement in writing, as parties of the first part thereto, with the aforesaid M. Hulings and S. Simcox, as parties of the second part, in which agreement it was on the part of the said parties of the first part agreed, that the said Bullion Bridge Company should be organized at the expense of the said parties of the first part, and that one fifth part of the capital stock of the said company should be assigned to the said parties of the second part; in consideration whereof it was therein on the part of the said parties of the second part agreed, that they, the said parties of the second part, did thereby waive all objection to the erection and maintenance of the bridge of the said Bullion Bridge Co. over the Allegheny river, and the said parties of the second part did therein further agree to discontinue the ferry aforesaid, as soon as the said bridge should be opened to

the public. That afterward to wit on the third day of October, A. D. 1878, the application aforesaid was duly approved by the governor of the commonwealth, and letters patent in due form issued to the said the Bullion Bridge Co., and thereupon one fifth part of the capital stock of the said company was transferred and assigned to the aforesaid M. Hulings and S. Simcox.

"That on or about the 1st day of January, A. D. 1879, the aforesaid M. Hulings, S. Simcox, Roy Stone, C. W. Mackey, J. M. Dickey, C. W. Gilfillan, R. G. Lamberton and W. J. Welsh, did cease to operate the ferry aforesaid, and did discontinue and abandon the same, and did remove all boats and appliances therefrom, and for the space of two years then next thereafter did wholly omit and fail to maintain or operate said ferry and did wholly fail to provide or keep any ferrymen or any boats or other craft at said ferry, or provide any means whatsoever whereby passengers, teams, or carriages could be carried across the river aforesaid.

"But notwithstanding the premises, the aforesaid M. Hulings, S. Simcox, Roy Stone, C. W. Mackey, J. M. Dickey, C. W. Gilfillan, R. G. Lamberton and W. J. Welsh, have for the space of one year last past and more, used and still do use the franchises, rights and privileges aforesaid without any lawful warrant or authority, and during the said time have usurped, and do usurp upon the commonwealth therein to the great damage and prejudice of the constitution and laws thereof."

Upon the foregoing suggestion, on May 9, 1887, a rule on the defendants to plead, answer or demur within thirty days after notice, was granted.

On June 4th and 7th, M. Hulings and Roy Stone answered, and on October 11th, on motion in open court, judgment of ouster against John Welsh, R. G. Lamberton, C. W. Gilfillan, S. Simcox and C. W. Mackey, in default of plea, answer, or demurrer. Depositions were then taken and filed, and on June 8, 1888, the cause, as to defendants, Hulings and Stone, was submitted to the decision of the court, without a jury, under the act of April 22, 1874, P. L. 109.

On September 24, 1888, the court, SIMONTON, P. J., filed the following decision:

FINDINGS OF FACT.

1. Defendants, M. Hulings, S. Simcox and Roy Stone, have been the owners, since 1877, of a ferry franchise, which was granted by the state of Pennsylvania to John A. Canan, his heirs and assigns, by an act passed January 11, 1867.    The second section of said act is as follows : " That the said John A. Canan, his heirs and assigns, shall keep the said landings, ferry and roads in good order and repair, fit for the transportation and passage of travelers, teams and carriages of all descriptions, and keep good and sufficient boats and other crafts, and competent, careful, sober ferrymen, who shall constantly, as occasion may require, attend for the purpose of carrying passengers, teams, carriages, etc., across said river, with reasonable diligence and care."

2. On the 23d day of September, 1878, an agreement, in writing, was made between Charles Mackey and others, of the one part, and defendant, S. Simcox, purporting to act for himself and defendant, Hulings, which recites that the parties of the first part propose to procure an act of incorporation as a bridge company, with authority to open and charge toll for the use of a bridge then recently erected on or near the location of said ferry over the Allegheny river near Big Scrubgrass creek ; and that the parties of the second part, in consideration of the one fifth of the capital stock of the said company, agree to waive all objection to the erection and maintenance of a toll bridge at said place, and " to discontinue the use of the ferry as soon as the bridge is opened for the public, reserving the right to reconstruct and operate said ferry if said bridge should be destroyed by fire or flood within two years."

3. The act of incorporation was obtained for said bridge company, with authority to charge toll for the use of the same, and it was opened to the public as a toll-bridge some time during the year 1879, and so continued until February, 1881, when it was carried away by a flood.    During this time the ferry was not operated, and the rope and boats connected therewith were removed and sold.

4. Very soon after the bridge was swept away the ferry was again opened for the public use, and has been kept so ever since, except when prevented by high water or ice.    There is no allegation that any person ever applied for passage over the river

by the ferry while the bridge was in use, or that the defendants ever failed to carry any one who applied for passage. The proceedings in this case were begun in December, 1886.

5. Defendant, Roy Stone, never agreed to, or became a party to the contract above referred to, nor did he ever receive any part of the capital stock mentioned as a consideration for said agreement.

### CONCLUSIONS OF LAW.

We are asked on these facts to render judgment of ouster against the defendants, on the theory that their failure to operate the ferry during the time when the bridge was open and used by the public was such a non-user of their franchises as to amount to a forfeiture thereof. It is undoubtedly the law that a charter or franchise may be forfeited by non-user, and that it is the duty of those to whom a charter or franchise is granted, in which the public are interested, to use it for the purpose for which it was granted, and to comply with the conditions contained in the grant upon which it was based.

The only condition contained in the grant of this ferry franchise is that found in the second section of the act already quoted in the findings of fact, from which it appears that the grantee, his heirs and assigns, was required to keep the ferry, landings and roads in good order and repair; to keep good and sufficient boats and other crafts and competent ferrymen, " who shall constantly, as occasion may require, attend for the purpose of carrying passengers."

[The facts found show that the boats and ferrymen were not kept at all times, but they do not show that they were ever wanting when their presence was needed. From everything that appears in the case it would seem that all persons who wished to cross the river, during the time the bridge was open, preferred to cross by it, and it has not been shown nor alleged that any one of the public ever wished, during that time, to cross by the ferry. The grant of the right to erect and take tolls for the use of the bridge was made by the commonwealth, the plaintiff in this case, and as the opening of this bridge rendered the ferry useless, it is not easy to see how the commonwealth can complain that it was not kept in use.] [2]

[As soon as was reasonable after the destruction of the bridge the ferry was again opened, and there is nothing in the case to

show that it has failed to supply the needs of the public travel across the river at that point at any time since.] [3]

[The bridge was destroyed in February, 1881, and this proceeding was not begun until December, 1886. This delay would of itself be a reason for at least hesitating to interfere with the defendants' franchise. When considered in connection with the other facts in the case we think it should be conclusive.] [4]

We, therefore, direct judgment to be entered in favor of the defendants, if exceptions be not filed according to law. ·

Thereupon the commonwealth filed exceptions to the said decision, specifying that the court erred, inter alia:

1. In not finding as a fact that the one fifth part of the capital stock of the Bullion Bridge Company was transferred to the defendants M. Hulings and S. Simcox, in accordance with the provisions of the agreement in evidence, dated September 23, 1878.[1]

5–7. In the conclusions of law in [ ] [2 to 4]

8. In directing that judgment be entered in favor of defendants.[5]

9. In not directing that judgment of ouster be entered against the defendants, in favor of the commonwealth.[6]

On December 28, 1888, the foregoing exceptions were overruled and judgment was entered in favor of the defendants. Thereupon, the commonwealth took this appeal, specifying that the court erred:

1–6. In overruling the commonwealth's exceptions.[1 to 6]

*Mr. E. W. Jackson* (with him *Mr. William S. Kirkpatrick*, Attorney General), for the appellant.

Counsel cited: Morawetz on Corp., § 1018; People v. Turnpike Road Co., 23 Wend. 254; State v. Ferry Co., 11 Neb. 354; People v. Plankroad Co., 27 Barb. 445; Kenton Co. Court v. Turnpike Co., 10 Bush (Ky.) 529.

*Mr. M. E. Olmsted*, for the appellees:

1. The first three specifications of error raise questions of fact only, and not of law. In cases heard by the court under the act of April 22, 1874, P. L. 109, the court finding both the

facts and the law, the facts found have the same effect as the verdict of a jury, and are not subject to review here: Jamison v. Collins, 83 Pa. 359; Lee v. Keys, 88 Pa. 175; Commonwealth v. Railroad Co., 104 Pa. 89; Brown v. Dempsey, 95 Pa. 243; Bradlee v. Whitney, 108 Pa. 362; Southern Md. R. Co. v. Moyer, 125 Pa. 506.

2. The failure to operate the ferry during the existence of the bridge, was not such a non-user as to constitute an abandonment: Raritan Water Power Co. v. Veghte, 21 N. J. Eq. 463; Commonwealth v. Railroad Co., 12 Gray 180; Hatch's Case, 18 Ohio 92; Brainard v. Railroad Co., 48 Vt. 107; People v. Oakland Co. Bank, 1 Doug. 282; Attorney-General v. Railroad Co., 27 N. J. Eq. 1; Zabriskie v. Railroad Co., 18 N. J. Eq. 178 (90 Am. Dec. 617); Morawetz on Corp., § 1011.

PER CURIAM:

The first three specifications of error are to the findings of fact by the learned judge below. As this was a reference under the act of 1874, the findings of fact by the court are not reviewable here, further than the finding of a jury is reviewable upon a writ of error in a common law proceeding: Jamison v. Collins, 83 Pa. 359; Lee v. Keys, 88 Pa. 175; Brown v. Dempsey, 95 Pa. 243; Commonwealth v. Lehigh Valley R. Co., 104 Pa. 89; Bradlee v. Whitney, 108 Pa. 362. In such cases we can only hear and determine questions of law arising upon bills of exception to the rulings of the judge relating to the evidence or law.

With these questions of fact out of the case there is nothing left of any importance. It certainly was not error for the court to hold (see fourth assignment) that the delay of these proceedings for over five years after the destruction of the bridge, was a reason why a chancellor should hesitate to interfere with the defendant's franchise, and, when considered with the other facts in the case, a conclusive reason why he should not do so. We find nothing which would have justified the learned judge below in entering a judgment for the commonwealth upon the quo warranto.

Judgment affirmed.