Bradbury, C. J.
After issue had been joined between the parties evidence was taken bearing on the matters in dispute. Both the pleadings and the evidence, we think, took a wider range than was necessary, and embraced inquiries into matters not within the province of the court, at least in this action. The pleadings and evidence seem to indicate that this court would or might fix a value for taxation on the hand telephones and transmitters which are the subjects of dispute. This notion, if it was in fact entertained by the parties, is erroneous for it is not for this or any other of the courts of the state in the first instance to place values for the purpose of taxation on any property whatever. The subjects of the dispute, the hand telephones and the transmitters, were the property of the American Bell Telephone Co., a foreign corporation, and under Section 2744, Revised Statutes, the duty of fixing its value for taxation and making return thereof to the County Auditor devolved on its officers and agents, subject, of course, to the control and revision of the former. If any mistakes or errors occur in these returns either on the part of the persons making them or of a County Auditor, whether such mistakes and errors consist in omitting to return all property lawfully taxable, or in the values placed on that returned, or both, there is provided by law an appropriate remedy for the same; but the present action being in mandamus is not adapted to that end. State v. Crites, 48 Ohio St., 460. If, however, the laws of the state invest the Auditor of State with authority to instruct county auditors in certain respects and require obedience on the part *374 of County Auditors to such instructions when given, then it is quite clear this obedience is a duty enjoined by law and may be enforced by mandamus. It falls strictly within the definition of mandamus contained in Section 6741, Revised Statutes. This authority of the Auditor of State rests on Section 166, Revised Statutes, which reads as follows: “Section 166: He shall, from time to time, prepare and transmit to the auditors of the several counties in the state such forms of returns to be made by them-to his office, and such instructions upon any subject affecting the state finances, or the construction of any statute, the execution oí which devolves in part upon county auditors, and which affects the interests of the state, as he deems conducive to the best interests of the state; and county auditors and local officers acting under such laws, shall observe and use such forms and obey such instructions.” This section clearly and explicitly confers on the Auditor of State power to instruct county auditors in all matters affecting the state’s finances, and with equal cleanness enjoins obedience on the latter officers to such instructions.
The instructions given by the Auditor of State to the County Auditor as set forth in the petition relate to the value that should be placed on certain property listed for taxation, and that is unmistakably a matter affecting the “state’s finances,” for the chief source of the revenue of the state is taxes levied on property. The instructions in question, therefore, fall within the power conferred by Section 166, Revised Statutes, on the State Auditor. While this section imposes on county auditors the duty of obedience to the instructions of the state auditor, it should be understood to embrace only lawful instructions. They would upon the plainest principles of reason be exempt from obeying an unlawful instruction, and certainly no court *375 by mandamus would compel obedience to an instruction unwarranted by law.
Where, however, the letter of instruction sent by the Auditor of State embraced several different though connected commandments, some of which were lawful and some unlawful, the county auditor should not be excused from obeying those that are lawful because of the joinder with them of the unlawful ones.
The petition discloses that the Auditor of State was of opinion that the telephonic instruments involved, in this inquiry and known as hand telephones and transmitters had no “usual selling price,” that is, were not manufactured and put upon the market for sale at all, and for that reason their capacity to earn money, or their rental value, should be considered in estimating for taxation their actual value in money. He also states that he is informed what that rental value or earning capacity is and places it at $14.00 per year, and insists that as $14.00 is equal to six per cent, per annum on $233, the value of the instrument should be deemed equal to that sum. But as he seems to concede that property in general is taxed only at two-thirds of its value, the same favor, in his opinion, should be extended to the telephone company, and these instruments valued only at two-thirds of $233 (their alleged rental value) or $155.33. It appears, therefore, as we construe the petition, that the Auditor of State not only commands the County Auditor in placing a value on the instruments in question for taxation, to consider their earnings or rental, but also instructs him to make that the sole test of that value. The answer interposed by the County Auditor advances a great many matters that we have not deemed necessary to refer to specifically; but construing the answer all together, we find that it admits that the transmitters have -no “usual selling *376 price,” but avers that tbe hand telephones are manufactured and sold in the market, and therefore, have a “usual selling price.” The answer according to our construction also shows that the County Auditor in fixing a value on these instruments considered only the cost of manufacture. The answer also denies that the earning capacity of these instruments is $14.00 per year, and avers that while that may be the sum annually received by the owners of the instruments, other valuable considerations besides their use entered into the contract by the terms of which that sum was payable. The pleadings as thus construed raise the questions that we care to discuss.
The evidence taken by the parties to maintain their respective contentions took as wide a range as the pleadings themselves, and as already indicated, went into details much further than was necessary according to the view of the case adopted by this court. Among other things it appears from the pleadings and evidence that the “hand telephones” mentioned is the hard rubber trumpet-shaped cylinder which is placed to the ear in receiving a telephonic message, and called a “receiver,” while the “transmitter” is the mouthpiece, into which the words are spoken, with the diaphragm, etc., immediately connected with it. The instruments are protected by a patent issued under the authority of the United States, which is owned by the American Bell Telephone Company, a corporation created under the laws of Massachusetts, which manufactures and owns them, and by which they are rented or leased to the Central Union Telephone Company to be used in this state in connection with the wites, etc., of the latter, for telephonic purposes. After they have been manufactured they are simply tangible articles of personal property, and being sent into this state by their owner for their own profit they *377 become a part of the general mass of that species of property found herein, and being within the jurisdiction of this state should be valued and taxed in the same manner that other property of its class, i. e., as tangible personal property, is valued and taxed by our laws. The constitution of 1851, Section 2 of Article 12, requires all property to be taxed “according to its true value in money.” No reason is apparent Avhy this constitutional rule without the aid of a legislative declaration on the subject would not have been a laAvful guide to assessing officers and owners of property in valuing the same for taxation whenever the machinery for taxation should be created and put into operation by laAv. However this may be, the general assembly at an early day after the adoption of the constitution prescribed rules for valuing personal property for taxation, which are embodied in Section 2739, Revised Statutes, as follows: “In listing personal property, it shall be valued at the usual selling price thereof, at the time of listing, and at the place where the same may then be; and if there be no usual selling price known to the person whose duty it is to fix a value thereon, then at such price as it is believed could be obtained therefor, in money, at such time and place.” The rule of the “usual selling price” unquestionably applies to, the great bulk of the tangible property of the state and is of easy application, and doubtless would have been used where applicable had the legislature kept silent for its intrinsic merits would commend it to all men charged with fixing the values of property for any purpose whatever, Where this rule cannot be applied the legislature has declared that the value for taxation should be what “it is believed could be obtained therefor in money.” This is not the formula adopted by the framers of the constitution to express the con *378 stitutional rule, and if there is any difference between the respective meanings of the two sets of words the legislative phraseology must yield to that of the constitution. Exchange Bank v. Hines, 3 Ohio St., 15, 22. The framers of the constitution did not contemplate nor intend that an owner of valuable and productive tangible personal property should be able to relieve himself from taxation on account of it by hedging it around with circumstances or conditions that would make it valueless to all the rest of mankind, though highly productive in his hands. Property is taxed in the hands of its owner for the support of the government which protects and secures him in its enjoyment and to construe that provision of the constitution which requires it to be taxed according to its true value in money to mean its value in money to him rather than to another, is reasonable. It carries out one manifest purpose of the constitution in this respect which is to prevent exemptions in favor of any species of productive personal property.
The telephonic instruments involved in this case may have no selling value whatever. In fact as respects the transmitter that is conceded by the County Auditor. This lack of a selling value results from a circumstance that it could not be put to any valuable use by a purchaser. It would be a mere curiosity, a piece of bric-a-brac in his hands, unless accompanied with a right to apply it to the uses for which it was created, i. e., that of sending telephonic messages. Therefore, if the selling value of the article, i. e., the value it would possess in the eye of a possible purchaser, is the standard of value for taxation, it should not be assigned any value at all. For in that sense of the phrase it has no value. The respondent, the County Auditor, does not contend that these articles had no value, and therefore should not be taxed at *379 all, but insists that the cost of manufacturing them should be made the standard of value for that purpose. This contention finds no support in the constitution or statutes of the state, and but little if any in the nature of things. In the case of an article just manufactured, sound and unworn, the cost of producing it might be a circumstance of great weight in estimating its value, but in respect of articles more or less worn, or that had been superseded by others better adapted to the same end or where their production had been cheapened or on the other hand become more expensive, it is manifest that the cost of production might be a very imperfect standard of its value. The legislature, it will be observed, has made no attempt to prescribe the means by which the money value of an article for taxation may be ascertained, nor in any way to limit the inquiry. It has left open to the person who is to perform this duty every avenue that leads to information which in its nature bears on the question. The conscientious officer will avail himself of all such information. No fact or circumstance having such bearing will be disregarded by him if called to his attention. That the income-producing capacity of an article is an important factor in determining its value is so obvious as to seem beyond the bounds of controversy. This doctrine was sanctioned in its application to real estate in State v. Jones, Auditor, 51 Ohio St., 513, and in Express Co. v. Ohio, 166 U. S., 220, and no reason is perceived nor has any been assigned why a principle so plain and just should not be applied universally to all species of property. This is the first inquiry that a prudent prospetive purchaser would make. Other considerations would doubtless receive his attention, as the original cost, the length of time it would last, the expense of repairs and the cost of re *380 production and the like; none of them would be passed by. Other considerations no doubt would occur to a sagacious, thoughtful man. But without pursuing the question further, we hold that the command of the Auditor of State requiring that the Auditor of Franklin County, the respondent, to consider the earnings or rental of the instrument in question, was lawful and should have been obeyed by the latter in respect to those that have no “usual selling price.”
The fact that an article is the fruit or product of a patent combination or process does not withdraw it from taxation. It is true no one can make or use the article without the consent of the patentee or his assignee, but when.it is made it becomes property, and as such is as completely under the dominion of the state as is an unpatented article. To tax an article protected by a patent is not taxing the process or combination by which it is produced. The proprietor of a patent doubtless has the exclusive right to use the process or combination patented. No one without his consent can do so. In this monopoly or right to keep others from its use resides the chief value of the patent. This right itself is property often of real and immense value before an article is made pursuant to it. And this intangible property the states of the Union cannot tax. People ex rel. Edison Electric Illuminating Co., etc., v. Assessors, 156 N. Y., 417; Robinson exparte, 2 Biss, 309; Commonwealth v. Westinghouse E. Mfg. Co., 151 Pa. St., 265; Commonwealth v. Phila. Co., 157 Pa. St., 527; Commonwealth v. Petty, 96 Ky., 452. The property in this right, however, is quite different from the property in an article made by the patented process or combination. The value of the article itself is the same whether it remains in the hands of the owner of the patent or has been sold by him to another. The state should not *381 be required to pause before taxing an article of tangible personal property found in its borders to ascertain whether it was the fruit of some patented process or combination or not. A mowing machine is taxed at its value in money although that value may consist largely of a patented combination. It would be impossible to ascertain what proportion of the entire value was due to the patented combination, and if it could not be taxed upon its entire value it could not be taxed at all. And this is true of all articles the manufacture of which involves the application of any process or combination covered by a patent; so that if an article cannot be taxed on the value which accrues to it by reason of its being patented, a large and valuable proportion of the property in the state will be withdrawn from taxation altogether.
These views find support in a considerable number of authorities, among which are: Webber v. Virginia, 103 U. S., 344; Commonwealth v. C. D. & P. Telephone Co., 145 Penn. St., 121; Patterson v. Kentucky, 97 U. S., 501, 503.
We now come to the contention on the part of the relator that the County Auditor should in valuing the articles in question give consideration only to their earning capacity, which he placed at $14 per' annum. If it had been conceded by the respondent that $14 was the net yearly earnings of these instruments, or the evidence had established that fact clearly, and it had further appeared that without renewal or repairs those instruments would continue in service at that rental for a great many years, say for a lifetime, their money value would be very great, perhaps approximately that which the relator directed the respondent to place upon them. The evidence, however, does not support this contention. The instruments are leased to the Central Union Telephone Company, *382 an Illinois corporation, that owns the telephone plant in operatin in Franklin county. While the contract between this corporation and the American Bell Telephone Company, the owner and lessor of the instruments, seems to contemplate perpetuity, nevertheless, its continued existence rests on the continuance of conditons in their nature uncertain. The instruments themselves do not bear a long life. But above all these, the annual payment of $14 is not simply a compensation for the use of the instruments. It is also the consideration for other valuable privileges and rights granted or guaranteed to the lessee. It is quite clear that the instructions of the relator in this matter are not only founded on a statute respecting the net income derived from these instruments, but that they also limit the inquiry to this one circumstance, thus making it the sole standard of value, although as we have shown other circumstances may, and in this instance did, exist, that bear materially on the question of that value. The County Auditor, therefore, was not bound to follow the instructions of the relator in this respect. That the earning capacity of these instruments are a material factor in ascertaining their value and should be considered, it would seem, to be too clear for controversy. The difficulty, however, of separating that portion of the yearly payment of $14, which is to be taken as the rental value, from that portion thereof, which is to be taken as compensation for other privileges and rights granted by the contract, is doubtless a serious obstacle to its application to the property involved, but perhaps not unsurmountable. However that may be, the difficulty is not one that falls within the province of this court in this case to overcome. It is a duty which the law devolves' on the respondent. He should have in good faith attempted, pursuant to the *383 instructions of the relator, to ascertain as near as practicable the proportion of the whole sum received by the American Bell Telephone Company from the Central Union Telephone Company that ought to be credited to the use of these instruments; and having done this, he should have considerd these earnings in connection with every other circumstance that came to his knowledge and that bore on the question, and placed on these instruments their true value in money.
The relator seems to have conceived that the valuation placed by the American Bell Telephone Company on these instruments was false within the meaning of Section 2781, Revised Statutes, and that the respondent on that account should ascertain the value of these instruments for the five years preceding the current year the instructions were given, and add the penalties provided by that section. It does not appear, however, in the evidence that the returns made by the American Bell Telephone Company during those years were false within the meaning of that section as construed by this court in Ratterman, Treas., v. Ingalls, 48 Ohio St., 468. Nor does it show that the company failed to return any instrument owned by them in Franklin county, or that they did not act in good faith and with reasonable care in valuing the instruments returned.

Judgment accordingly.

Shauk, J., dissents.