1898.] People ex rel. Edison El. Il. Co. *v.* Assessors. 417

N. Y. Rep.]                    Statement of case.

The People of the State of New York ex rel. Edison Electric Illuminating Company of Brooklyn, Respondent, *v.* The Board of Assessors of the City of Brooklyn, Appellant.

1. Tax — Patent Rights. Patent rights, granted by the United States, as distinguished from tangible property produced by the application of the invention, are not within the taxing power of the state.

2. Assessment of Capital Stock of Corporation — Patent Rights. In assessing for taxation the capital stock of a corporation, even though not the original patentee, the inclusion of the value of patent rights granted by the United States is erroneous and cannot be sustained, where it is found that the patent rights are owned by the corporation, and a claim that the rights acquired by the corporation were so qualified and restricted as not to constitute an acquisition of patent rights, as such, is not substantiated.

*People ex rel. Edison El. Il. Co.* v. *Neff,* 19 App. Div. 599, affirmed.

(Argued June 6, 1898; decided October 4, 1898.)

Appeal from an order of the Appellate Division of the Supreme Court in the second judicial department, entered July 8, 1897, affirming an order of Special Term vacating, on certiorari, an assessment of the relator's capital stock.

The relator is an electric lighting corporation, and the assessment included $945,000 for United States patent rights.

Further facts are stated in the opinion.

*Almet F. Jenks* for appellant. The so-called patent-rights investment did not entitle relator to a deduction on the ground that there was an attempt to tax a patent of the United States. (*Patterson* v. *Kentucky,* 97 U. S. 501, 506; *People* v. *Am. Bell Tel. Co.,* 117 N. Y. 241–249; *Commonwealth* v. *Brush Electric Co.,* 28 W. N. 527; *Commonwealth* v. *Edison Electric Light Co.,* 28 W. N. 531; *Railroad Co.* v. *Peniston,* 18 Wall. 5; *W. U. Tel. Co.* v. *Mass.,* 125 U. S. 550; *People ex rel.* v. *Barker,* 139 N. Y. 55–64.)

*Edward M. Shepard* and *Frank Harvey Field* for respondent. The portion of the relator's capital stock, $945,000, invested in United States patent rights was not taxable.

418 People ex rel. Edison El. Il. Co. *v.* Assessors. [Oct.,

Opinion of the Court, per Parker, Ch. J.        [Vol. 156.

(*People ex rel.* v. *Barker*, 139 N. Y. 65; L. 1896, ch. 908, § 182; L. 1880, ch. 542, as amended by ch. 361, L. 1881; *Bloomer* v. *McQuewan*, 14 How. [U. S.] 539, *549; *People ex rel.* v. *Wemple*, 138 N. Y. 1; *Webber* v. *Virginia*, 103 U. S. 344; *California* v. *Central Pacific R. R. Co.*, 127 U. S. 1; *In re Sheffield*, 64 Fed. Rep. 833; Const. U. S. art. 1, § 8, subd. 8; *Grant* v. *Raymond*, 6 Pet. 218, 241; *Blanchard* v. *Sprague*, 3 Sumn. 535; *McCulloch* v. *Maryland*, 4 Wheat. 316, *425; .*People ex rel.* v. *Neff*, 15 App. Div. 13.)

Parker, Ch. J.    Whether under the taxing power of the state patent rights may be assessed, has not been passed upon by this court.    The question was referred to as an important one in *People ex rel. Edison El. Il. Company* v. *Barker* (139 N. Y. 55), but the court found that it was not necessary to decide it in order to dispose of the case, and so declined to consider it.    The result of our present examination leads to the conclusion that while the question has not been heretofore considered by this court, it cannot, after all, be said to be an open one; for it was long ago asserted by the Supreme Court of the United States that patent rights were not taxable by the states, and the doctrine has been recognized so often since that it must be fairly regarded as settled in that court.    And if we are right in that assumption, then it is the duty of this court to follow it.

The argument in support of the doctrine may be briefly stated as follows:  The Constitution of the United States (Art. I, sec. 8, subdiv. 8) conferred upon Congress the power to "promote the progress of science and useful arts, by securing for limited times, to authors and inventors, the exclusive right to their respective writings and discoveries."

In pursuance of this power, Congress enacted that patents should be issued to inventors, which should secure to them for a limited term the "exclusive right to make, use and vend the invention or discovery through the United States and the territories thereof."    (U. S. Rev. Stat. § 4884.)  Patent rights are, therefore, granted under the Federal Constitution and

1898.] People ex rel. Edison El. Il. Co. *v.* Assessors. **419**

N. Y. Rep.] Opinion of the Court, per Parker, Ch. J.

necessarily for the promotion of federal purposes. (*Grant* v. *Raymond*, 6 Peters, 218, 241; *Ames* v. *Howard*, 1 Sumner, 482; *Blanchard* v. *Sprague*, 3 Sumner, 535.) The federal purpose is primarily to stimulate genius, talent and enterprise by holding out that encouragement which patents give, but ultimately to secure to the whole community the great advantages that flow from the free communication of secrets, processes and machinery.

The next step is, that patent rights being created under the Federal Constitution and laws for a federal purpose, the states are without the right to interfere with them. The right to tax a federal agency constitutes a right to interfere with, to obstruct and even to destroy the agency itself, for conceding the right of the state to tax at all, then it may tax to the point of destruction. This doctrine is elaborately discussed by Chief Justice Marshall in the *U. S. Bank Case* (*McCulloch* v. *Maryland*, 4 Wheaton, 316) wherein the court decides that Congress has power to incorporate the bank as a federal agency, and that having done so, the state cannot tax the bank upon its circulation. The latter proposition is regarded as a necessary conclusion from the former. The Federal government having the right to create the agency, it necessarily has the right to protect it, not only from destruction, but from interference from any other government, whether such interference be in the guise of taxation, or otherwise, as the power to tax involves the power to destroy, and the power to destroy may render useless the power to create.

In the course of his opinion, Chief Justice Marshall said: "If the states may tax one instrument employed by the Government in the execution of its powers, they may tax any and every other instrument. They may tax the mail; they may tax the mint; they may tax patent rights; they may tax the papers of the custom house; they may tax judicial process; they may tax all the means employed by the government, to an excess which would defeat all the ends of government."

The criticism upon this argument, as now made, is that patent rights were not properly classified with taxing the mail

420 People ex rel. Edison El. Il. Co. *v.* Assessors. [Oct.,

Opinion of the Court, per Parker, Ch. J.      [Vol. 156.

and taxing the mint, for while the latter constitute a means of government, patent rights do not; that the granting of patents by the government is not necessary to the execution of its powers, but constitutes merely a privilege to a person to exclusively practice or exploit his inventions for his own benefit, a privilege which, if it prove of value, should bear its proportion of the public burdens in the political division having jurisdiction of the person and property of the inventor; but whether or not patent rights were properly included with the mails and the mint and judicial process, as a means of government, and thus exempted from interference by the taxing power of the states, it is clear that, from the time of the decision in the *U. S. Bank* case until now, wherever the courts, whether state or United States, have had occasion either to consider the subject or to refer to it, they have conceded it to be settled that patent rights are not assessable under the taxing power of the states.

In *Webber* v. *Virginia* (103 U. S. 344) Webber was convicted in the state court of unlawfully selling certain sewing machines without first having obtained a license and paid the tax imposed by law for the privilege. His defense, in part, was that the machines sold were constructed according to the specifications of the patent held by the company. This point was held to be not well taken, the court saying : "And the right conferred by the patent laws of the United States to inventors to sell their inventions and discoveries, does not take the tangible property in which the invention or discovery may be exhibited or carried into effect, from the operation of the tax and license laws of the state. * * * It is only the right to the invention or discovery — the incorporeal right — which the states cannot interfere with." *In re Sheffield* (64 Fed. Rep. 833) asserts that the state cannot tax the right to exclude all others than the inventor from the use or sale of an invention or discovery. (*Ex parte Robinson*, 2 Bissell, 313 ; *May* v. *Buchanan County*, 29 Fed. Rep. 469.)

The same doctrine has been laid down by the courts of last resort in Pennsylvania, Kentucky and Tennessee. (*Common-*

*wealth* v. *Westinghouse Mfg. Co.*, 151 Pa. St. 265 ; *Commonwealth* v. *Philadelphia Company,* 157 Pa. St. 527 ; *Commonwealth* v. *Edison El. L. Co.*, 157 Pa. St. 529 ; *Commonwealth* v. *Petty*, 96 Ky. 452 ; *State* v. *Butler*, 3 Lea [Tenn.], 223.) It has also been asserted by the following text writers : Cooley on Constitutional Limitations, 590 (6th ed.); Cooley on Taxation, 380 (2d ed.); Walker on Patents, § 155.

The doctrine is also recognized in cases that point out the distinction between the right to property in the physical substance that is the fruit of discovery, and the right of discovery itself. The latter, it is asserted in *Patterson* v. *Kentucky* (97 U. S. 501, 506), "may be secured and protected by national authority against all interference, but the use of the tangible property which comes into existence by the application of the discovery is not beyond control of state legislation, simply because the patentee acquires a monoply in his discovery."

This distinction was observed in *Commonwealth* v. *C. D. & P. Tel. Co.* (145 Pa. St. 121) and in *Same* v. *Brush El. L. Co.* (Id. 147). In the first of these cases the court upheld the assessment upon the ground that the investment of the relator was not made in the patents of the American Bell Telephone Company, but instead in the lease of the instruments of that company employed in transmitting or reproducing sound. This decision was followed in the *Brush Case* (*supra*), in which the issue of stock by the relator to pay for the use of appliances from a parent company, was held not to be an investment in patent rights so as to relieve it from the operation of the tax laws of the state.

While it appears from the record that the case at bar is not analogous to either of the last two cases cited, the appellant insists that another question is presented, which if answered in the negative, will fully justify the assessment made. The question is this : Assuming that patent rights are not taxable by the states and that the capital stock of an electric company is used to pay for the use of methods and appliances of a parent company, protected by patents, can it be said that this stock is invested in patent rights within the general principles that patents are not taxable ?

The facts assumed to exist as the basis for the argument in support of a negative answer to the question are : The relator has not acquired any portion of the patent rights of the Edison Electric Company, by assignment or otherwise, nor has it invested any part of the $945,000 in such patents; but, instead, such investment was made by the relator for the privilege of doing its business by the methods and with the machinery of the parent company, and the argument briefly is, that the patent is not taxed by the assessment complained of, and, consequently, the means of government are not taxed, for the relator is not the patentee and does not stand in its shoes.    Relator cannot sell the patents, any privileges under them, the machinery covered by them, nor the methods; but, as the record comes to us, we are not at liberty to treat this case as if the facts were established upon the hearing, as the appellant's argument assumes them to be.

The learned counsel calls our attention to testimony that tends to create a suspicion that if the agreement between the companies had been offered in evidence, it might have supported his view of the nature of the relator's relations to the patent rights of the Edison Company.    But the agreement was not introduced, and whatever conflict there may be in the testimony on the subject is put at rest by the Special Term's finding and its subsequent affirmance.    That court found that the final assessment "includes $945,000, the value of certain patent rights owned by the relator, which had been granted by the United States for certain inventions."

This court can neither add to, nor subtract from, this finding ; but it may be said that the record does not indicate that either the assessors or their then counsel entertained a different view.

It follows that the question propounded by counsel cannot properly be answered, for it is not before us.

The order should be affirmed.

All concur.

Order affirmed.