## ALLEN *v.* RILEY.

ERROR TO THE SUPREME COURT OF THE STATE OF KANSAS.

No. 99.  Submitted November 6, 1906.—Decided December 3, 1906.

While a State may not pass any law prohibiting the sale of patents for inventions or nullifying the laws of Congress regulating their transfer, it has the power, until Congress legislates on the subject, to make such reasonable regulations in regard to the transfer of patent rights as will protect its citizens from fraud; and a requirement in the laws of Kansas that before sale or barter of patent rights, an authenticated copy of the letters patent and the authority of the vendor to sell the right patented shall be filed in the office of the clerk of the county within which the rights are sold is not an unreasonable regulation.

71 Kansas, 378, affirmed.

FRANCES J. RILEY, the defendant in error, who was plaintiff below, recovered a judgment against plaintiffs in error, defendants below, for $1,250, in the District Court of Brown County, in the State of Kansas, which judgment was affirmed by the Supreme Court of the State, and the defendants below have brought the case here by writ of error.

The suit was commenced by the filing of a petition by defendant in error, plaintiff below, in a District Court of Kansas, March 17, 1902, to recover the value of certain lands alleged to have been transferred by the plaintiff to the defendant Erasmus W. Allen, in part payment for the transfer to plaintiff of rights for the State of Kentucky under a patent dated January 30, 1901, for a washing machine.  The right to recover is based upon the failure of the defendants to comply with the Kansas statute, which failure defendants do not

deny, but they insist that the statute is void as being in violation of the Constitution of the United States and the act of Congress referred to in the opinion. The Kansas statute is chapter 182 of the Laws of 1889. A copy of the act is set out in the margin.[1]

*Mr. N. H. Loomis, Mr. R. W. Blair* and *Mr. H. A. Scandrett* for plaintiffs in error:

The Constitution gives Congress power to promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries, and Congress has exer-

---

[1] Chapter 182, Laws of 1889 (paragraphs 4356, 4357 and 4358, General Statutes of Kansas, 1901), reads as follows:

"Sec. 1. It shall be unlawful for any person to sell or barter or offer to sell or barter any patent right, or any right which such person shall allege to be a patent right, in any county within this State, without first filing with the clerk of the District Court of such County copies of the letters patent duly authenticated, and at the same time swearing or affirming to an affidavit before such clerk that such letters patent are genuine, and have not been revoked or annulled, and that he has full authority to sell or barter the right so patented; which affidavit shall also set forth his name, age, occupation and residence; and if an agent, the name, occupation and residence of his principal. A copy of this affidavit shall be filed in the office of said clerk, and said clerk shall give a copy of said affidavit to the applicant, who shall exhibit the same to any person on demand.

"Sec. 2. Any person who may take any obligation in writing for which any patent right, or right claimed by him or her to be a patent right, shall form a whole or any part of the consideration, shall, before it is signed by the maker or makers, insert in the body of said written obligation, above the signature of said maker or makers, in legible writing or print, the words, 'Given for a patent right.'

"Sec. 3. Any person who shall sell or barter or offer to sell or barter within this State, or shall take any obligation or promise in writing for a patent right, or for what he may call a patent right, without complying with the requirements of this act, or shall refuse to exhibit the certificate when demanded, shall be deemed guilty of a misdemeanor, and on conviction thereof before any court of competent jurisdiction shall be fined in any sum not exceeding one thousand dollars, or be imprisoned in the jail of the proper county not more than six months, at the discretion of the court or jury trying the same, and shall be liable to the party injured in a civil action for any damages sustained."

cised that power by appropriate legislation regulating the issue of letters patent and providing for their assignment. 3 U. S. Comp. Stat. 1901, § 4898, as amended by act of March 3, 1897. Congress has attempted to take exclusive charge of the issuing and assignment of patents.

It has prescribed the manner of making application, the proof required, the time for which granted, and finally, that every patent shall be assignable by an instrument in writing, which shall be recorded in the Patent Office within three months from its date.

That the assignment shall be in writing and be recorded in the Patent Office are the only restrictions prescribed by Congress, and are the only ones contemplated.

The question is squarely presented whether or not the state statute placing additional restrictions on the assignment of a patent is in conflict with the Constitution and laws of the United States. The state court has held it was not. *Mason* v. *McLeod,* 57 Kansas, 105. The decisions of the state courts are not harmonious. Those taking a contrary view to the Kansas court include *Hollida* v. *Hunt,* 70 Illinois, 109; *Cranson* v. *Smith,* 37 Michigan, 309; *Crittenden* v. *White,* 23 Minnesota, 24; *Ex parte Robinson,* 2 Biss. 309; *Helm* v. *National Bank,* 43 Indiana, 167, but see *Patterson* v. *Kentucky,* 97 U. S. 501. See also *Brechbill* v. *Randall,* 102 Indiana, 528; *Hankey* v. *Downey,* 116 Indiana, 118; *Wilch* v. *Phelps,* 14 Nebraska, 134; *Commonwealth* v. *Petty,* 29 S. W. Rep. 291; *Woolen* v. *Banker,* 2 Flipp. 33; *Castle* v. *Hutchinson,* 25 Fed. Rep. 394; *Pegram* v. *Am. Alkali Co.,* 122 Fed. Rep. 1000; *Brown* v. *Pegram,* 125 Fed. Rep. 577. *Reeves* v. *Corning,* 51 Fed. Rep. 787; *Webber* v. *Virginia,* 103 U. S. 344, distinguished.

This court has decided that a State in the exercise of its police powers may regulate the handling of a product manufactured under a patent, such as illuminating oil as in *Patterson's case* and sewing-machines in *Webber's case,* but it has never decided that a State can in any way interfere with an

inventor's exclusive right to his discoveries. The decisions in commenting on *Patterson's* and *Webber's cases* show the plain distinction made between the tangible property manufactured under a patent and the incorporeal rights of the owner of the patent. *Commonwealth* v. *Petty,* 29 S. W. Rep. 291; *Castle* v. *Hutchinson,* 25 Fed. Rep. 394; *Pegram* v. *Am. Alkali Co.,* 122 Fed. Rep. 1005; *Wilch* v. *Phelps,* 14 Nebraska, 134.

The Kansas Supreme Court upholds the statute on the ground that it is a police regulation, but overlooks the vice of including in one class all patent-right owners, good and bad, and imposing upon a certain kind of property created by an act of Congress, burdens not borne by any other property in the State.

The act is no more a proper police regulation than was the act of Virginia, requiring all flour imported from other States to be inspected, which was held void by this court. *Voight* v. *Wright,* 141 U. S. 62.

The Kansas statute also violates the equal protection clause of the Fourteenth Amendment, because it singles out a class of property brought into existence by an act of Congress under a constitutional grant and imposes a burden simply on account of its character. *Cammeyer* v. *Newton,* 94 U. S. 226.

*Mr. A. E. Crane* and *Mr. T. T. Woodburn* for defendants in error:

The statute does not trench upon Federal power, nor interfere with the right secured to a patentee by the Federal law. It is true that no State can interfere with the right of the patentee to sell and assign his patent, or take away any essential feature of his exclusive right. The provisions in question, however, have no such purpose or effect. They are in the nature of police regulations, designed for the protection of the people against imposition and fraud. There is great opportunity for imposition and fraud in the transfer of intangible property, such as exists in a patent right, and many

States have prescribed regulations for the transfer of such property, differing essentially from those which control the transfer of other property. There were some early decisions holding that such regulations trenched upon the Federal power and the rights of the patentee, but recent authorities hold that reasonable police regulations may be enacted by the State without usurping any of the powers of the Federal Government or infringing upon the exclusive rights of the patentee. *Breckbill* v. *Randall* 102 Indiana, 528; *New* v. *Walker*, 108 Indiana, 356; *Pape* v. *Wright*, 116 Indiana, 502; *Sandage* v. *Studebaker*, 142 Indiana, 148; *Tod* v. *Wick Brothers & Co.*, 36 Ohio St. 370; *Herdic* v. *Rœssler*, 109 N. Y. 127; *Haskell* v. *Jones*, 96 Pa. St. 173; *Patterson* v. *Kentucky*, 97 U. S. 501; *Webber* v. *Virginia*, 103 U. S. 344.

The power to establish the ordinary regulations of police has been with the individual States, and cannot be assumed by the National Government. Cooley, Const. Lim., 572, 574; *Patterson* v. *Kentucky*, 97 U. S. 501, and see also *Reeves* v. *Corning*, 51 Fed. Rep. 774, 782; *Re Brosnahan*, 18 Fed. Rep. 62; *Livingston* v. *Van Ingan*, 9 Johns. 528; *Cammeyer* v. *Newton*, 94 U. S. 225.

The statute does not abridge the privileges and immunities of citizens guaranteed by the Fourteenth Amendment to the Constitution. That amendment does not interfere with the proper exercise of police power by the States. *Mugler* v. *Kansas*, 123 U. S. 623; *Powell* v. *Pennsylvania*, 127 U. S. 678; *Yick Wo* v. *Hopkins*, 118 U. S. 356.

If the statute is a reasonable exercise of police power, it necessarily follows that it does not violate the protective clause of the amendment. *Voight* v. *Wright*, 141 U. S. 62, distinguished.

Mr. Justice Peckham, after making the foregoing statement, delivered the opinion of the court.

The sole question for our determination in this case is con-

cerning the constitutionality of the Kansas act. The opinion of the Supreme Court of the State of Kansas is reported in 71 Kansas, 378, and 80 Pac. Rep. 952.

The judgment herein is founded upon *Mason* v. *McLeod,* 57 Kansas, 105, which case has been followed by that of *Pinney* v. *First National Bank of Concordia,* 68 Kansas, 223.

The defendants insist that the act in question violates article one, section 8, of the Constitution of the United States, and the Federal statute passed in pursuance thereof, being Rev. Stat. § 4898; 3 Comp. Stat. p. 3387. The Constitution grants to Congress the right "To promote the progress of science and useful arts by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries;" and section 4898 of the Revised Statutes provides that every patent or interest therein shall be assignable in law by an instrument in writing, which assignment is made void against any subsequent purchaser or mortgagee, for a valuable consideration, without notice, unless it is recorded in the Patent Office within three months from the date thereof.

It is asserted by the plaintiffs in error that the subject of the sale or assignment of the whole or any part of an interest in a patent is derived from the laws of Congress passed with reference to the constitutional provision quoted above, and that any regulations whatever, by any state authority in regard to such assignment or sale, and making provision in respect to them, are illegal.

The Supreme Court of Kansas has maintained and upheld the Kansas act on the ground that the statute is simply a reasonable and proper exercise of the police power of the State in regard to the subject of the act. *Mason* v. *McLeod, supra.* That court was of opinion that the provisions of the Kansas statute did not trench upon the Federal power nor interfere with the rights secured to patentees by Federal law. The opinion does not assert that a state statute can interfere with the right of a patentee to sell or assign his patent, nor that it can take away any essential feature of his exclusive right, but,

as is stated, the provisions in the act have no such purpose
or effect; that "they are in the nature of police regulations
designed for the protection of the people against imposition
and fraud. There is great opportunity for fraud and im-
position in the transfer of intangible property, such as exists
in a patent right, and many of the States have prescribed
regulations for the transfer of such property differing essentially
from those which control the transfer of other property."
Many authorities are cited, and the opinion then continues:
"The doctrine of these cases is that the patent laws do· not
prevent the State from enacting police regulations for the
protection and security of its citizens, and that regulations
like ours, which are mainly designed to protect the people
from imposition by those who have actually no authority to
sell patent rights or own patent rights to sell, should be upheld.
We think the statue is valid."

In Indiana a statute, which is like that in Kansas, has been
upheld by the Supreme' Court of that State. *Brechbill* v.
*Randall,* 102 Indiana, 528. That case has since that time
been followed in Indiana. *New* v. *Walker,* 108 Indiana, 365.
In Ohio a statute somewhat similar to the one in question has
been upheld. *Tod* v. *Wick· Bros. & Co.,* 36 Ohio St. 370.
And the same result has been reached in Pennsylvania. *Hask-
ell* v. *Jones,* 86 Pa. St. 173. In *Herdic* v. *Roessler,* 109 N. Y.
127, the validity of the same kind of a statute has been upheld.
See also *Wyatt* v. *Wallace,* 67 Arkansas, 575; *State* ·v. *Cook,*
107 Tennessee, 499. The statutes in the different States are
not all precisely like the Kansas law, but they make provisions
in regard to the sale or assignment of rights under a patent,
and sometimes in regard to notes given for their purchase,
which cannot be upheld under the contention of plaintiffs in
error herein, that all such provisions are in violation of or
inconsistent with the laws of Congress on the subject. The
courts of some other States, having like questions before them,
have held their statutes void. *Hollida* v. *Hunt,* 70 Illinois,
109; *Cranson* v. *Smith,* 37 Michigan, 309; *Wilch* v. *Phelps,* 14

Nebraska, 134; *State* v. *Lockwood*, 43 Wisconsin, 403, and some others.

The Circuit Court of Appeals of the Eighth Circuit, in *Ozan Lumber Co.* v. *Union County National Bank*, 145 Fed. Rep. 344, has held a statute of Arkansas upon this same subject void, because of its discrimination between articles of property of the same class or character, based only on the fact that the property discriminated against was protected by a patent granted by the United States. In the opinion in the case, authorities upon the subject are cited and commented upon. Among the cases cited are *Patterson* v. *Kentucky*, 97 U. S. 501, and *Webber* v. *Virginia*, 103 U. S. 344.

In *Patterson* v. *Kentucky, supra*, the owner of a patent right for an improved burning oil was convicted of the violation of a Kentucky statute by the sale of the oil covered by the patent. The owner claimed the right to sell such oil notwithstanding the statute, which provided a standard below which oil was regarded as dangerous for illuminating purposes and the sale of which was prohibited. It was admitted the patented oil did not come up to the state standard. This court held the conviction was right, and that the owner of the patent was not protected, by reason of his ownership, from liability under the state statute. That statute was held to be one passed in the legitimate exercise of the powers of the State over its purely domestic affairs, and it was said that it did not violate either the Constitution or laws of the United States, as when property protected by patent once comes into existence its use is subject to the control of the several States to the same extent as any other species of property.

*Webber* v. *Virginia, supra*, relates also to tangible property covered by a patent, and it was held that the patent did not exclude from the operation of the taxing or licensing law of the State the tangible property manufactured under a patent. It was said in that case that "Congress never intended that the patent laws should displace the police powers of the States, meaning by that term those powers by which the health, good

order, peace, and general welfare of the community are promoted. Whatever rights are secured to inventors must be enjoyed in subordination to this general authority of the State over all property within its limits."

While these two cases do not cover the one now before us, because they refer to tangible property which has been manufactured and come into existence under a patent, and the case before us relates to provisions which are to accompany an assignment of intangible rights, growing out of a patent, yet the general power of the States to legislate in order to protect their citizens in their lives and property from fraud and deceit is recognized, not as being without limit, of course, but as being properly exercised in the cases named.

We think the State has the power (certainly until Congress legislates upon the subject) with regard to the provision which shall accompany the sale or assignment of rights arising under a patent, to make reasonable regulations concerning the subject, calculated to protect its citizens from fraud. And we think Congress has not so legislated by the provisions regarding an assignment contained in the act referred to.

In some of the cases holding such statutes void it is said that it is unfortunately true that many frauds are committed under color of patent rights, and that the patent laws are not so framed as to secure the public from being cheated by worthless inventions, but notwithstanding that they hold statutes of the nature of the one under consideration to be void, as trenching upon the rights of the owner of a patent secured by the Constitution and laws of the United States.

To uphold this kind of a statute is by no means to authorize any State to impose terms which, possibly, in the language of Mr. Justice Davis, in *Ex parte Robinson*, 2 Biss. 309, "would result in a prohibition of the sale of this species of property within its borders, and in this way nullify the laws of Congress which regulate its transfer, and destroy the power conferred upon Congress by the Constitution." Such a statute would not be a reasonable exercise of the powers of the State.

In Michigan the court, speaking through Mr. Justice Campbell, while holding the act under review in that case upon this subject invalid, *Cranson* v. *Smith*, 37 Michigan, 309, said: "While we cannot but recognize the magnitude of an evil which has brought patents into popular discredit, and has provoked legislation in several States similar to that in Michigan, we cannot on the other hand fail to see in these laws a plain and clear purpose to check the evil by hindering parties owning patents from dealing with them as they may deal with their other possessions." If there is a special evil, unusually frequent and easily perpetrated when parties are dealing in the sale of rights existing or claimed to exist under a patent, we do not see why a State may not, in the *bona fide* exercise of its powers, enact some special statutory provision which may tend to arrest such evil, and may omit to enact the same provision concerning the disposal of other property. There is no discrimination which can be properly so called against property in patent rights, exercised in such legislation. It is simply an attempt to protect the citizen against frauds and impositions which can be more readily perpetrated in such cases than in cases of the sale or assignment of ordinary property.

The act must be a reasonable and fair exercise of the power of the State for the purpose of checking a well-known evil and to prevent, so far as possible, fraud and imposition in regard to the sales of rights under patents. Possibly Congress might enact a statute which would take away from the States any power to legislate upon the subject, but it has not as yet done so. It has simply provided that every patent, or interest therein, shall be assignable in writing, leaving to the various States the power to provide for the safeguarding of the interests of those dealing with the assumed owner of a patent, or his assignee. To deal with that subject has been the purpose of the acts passed by the various States, among them that of the State of Kansas, and we think that it was within the powers of the State to enact such statute. The expense of

filing copies of the patent and the making of affidavits in the various counties of the State in which the owner of the rights desired to deal with them is not so great in our judgment as to be regarded as oppressive or unreasonable, and we fail to find any other part of the act which may be so regarded. Some fair latitude must be allowed the States in the exercise of their powers on this subject. It will not do to tie them up so carefully that they cannot move, unless the idea is that the States have positively no power whatever on the subject. This we do not believe, at any rate in the absence of Congressional legislation. The mere provision in the Federal statute for an assignment and its record as against subsequent purchasers, etc., is not such legislation as takes away the rights of the States to legislate on the subject themselves in a manner neither inconsistent with nor opposed to the Federal statute. We think the judgment is right, and it is

*Affirmed.*

MR. JUSTICE WHITE, with whom concurs MR. JUSTICE DAY, dissenting.

My brother Day and myself dissent. The reasons, however, which impel him are broader than those influencing me. In general terms the Kansas statute, which the court now upholds, compels one selling a patent right in any county of the State of Kansas to file with the clerk of such county an authenticated copy of the patent, together with an affidavit as to the genuineness of the patent, and as to other matters. The statute, moreover, exacts that where a note is given for the purchase price of a patent right, there shall be inserted in the note a statement that it is given for a patent right, presumably to deprive the note of the attributes of commercial paper. We both think that the requirements as to recording the patent and affidavit are void, because repugnant to the power delegated to Congress by the Constitution on the subject of patents, and because in conflict with the legislation of Congress on the

same subject. And, for like reasons, my brother Day is also of the opinion that the provision is void which exacts an insertion in a note given for the sale of a patent right of the fact that it was given for such sale. This latter provision, in my opinion, the State had the power to make as a reasonable police regulation not repugnant to the authority as to patents delegated to Congress by the Constitution or the legislation which Congress has enacted in furtherance thereof.