# Staunton

COMMONWEALTH OF VIRGINIA V. CLEON M. HANNAFORD.

September 22, 1932.

Present, Campbell, C. J., and Holt, Hudgins, Gregory and Chinn, JJ.

The opinion states the case.

*W. W. Martin* and *Henry R. Miller, Jr.,* for the Commonwealth.

*Wirt P. Marks, Jr.,* and *Stephen H. Simes,* for the defendant in error.

CAMPBELL, C. J., delivered the opinion of the court.

This case is before this court on a writ of error to a judgment of the Circuit Court of the city of Richmond. On the 31st day of December, 1928, Cleon M. Hannaford, a citizen of the State of Virginia, filed his petition in the circuit court for the correction of State income taxes assessed against him by the commissioner of the revenue of the city of Richmond. Final judgment was rendered against the Commonwealth and an order directing the refund of the sum of $406.88, erroneously paid by Hannaford, was entered. This action of the court is assigned as error.

Upon the trial, counsel for the Commonwealth and Hannaford entered into the following stipulation of facts:

"It is stipulated and agreed that, for the purpose of trial of the above case pending in the Circuit Court of the city of Richmond, for the correction of income tax assessment made against the petitioner in the year 1927 upon 1926 income, and refund of taxes paid, and for the purpose of any appeal or appeals from the decision of said Circuit Court of the city of Richmond, the following agreed facts shall be taken and considered as facts proved therein to all intents and purposes:

"(1) The petitioner, Cleon M. Hannaford, of the city of Richmond, Virginia, was and is the inventor of improvements in angle cocks for railway cars, for which Letters Patent of the United States of America, No. 1,482,988, dated February 5, 1924, and No. 1,531,610, dated March 31, 1925, were issued to said petitioner, and for which at the time of the sale hereinafter mentioned the petitioner had applications pending for two other Letters Patent of the United States of America, bearing United States Patent Office serial numbers 671,050 and 690,323, and filed October 26, 1932, and February 2, 1924, respectively, and for which Letters Patent of the Dominion of Canada, No. 245,073, dated December 9, 1924, and No. 249,749, dated May 19, 1925, were issued to said petitioner.

"(2) By agreement dated the 26th day of July, 1926, said petitioner, in consideration of the sum of $15,000.00 to

him paid, assigned and transferred to the Westinghouse Air Brake Company, a corporation organized and existing under the laws of the State of Pennsylvania, said United States Letters Patent and Patent Applications, and said Canadian Letters Patent, a copy of which agreement is hereto attached and is made a part hereof, and is to be read in evidence herewith.

"(3) In the year 1927, there was included as income in said petitioner's income tax return to the Commonwealth of Virginia, a copy of which return is attached hereto and is made a part hereof, said sum of $15,000.00, paid to and received by said petitioner as aforesaid, less the costs and expenses of $723.45 which said petitioner incurred in connection with the development of said inventions, and in procuring said patents therefor, leaving the net sum of $14,276.55 of said sum, included in said 1927 tax return upon which income taxes for said year were levied.

"(4) The income taxes for the year 1927, assessed and levied upon said sum of $14,276.55, amounted to $428.30, which taxes said petitioner duly and regularly paid.

"(5) Of said net amount of $14,276.55 included in petitioner's 1927 net income, the sum of $13,562.72, represented the net consideration received for the aforesaid assignment and transfer of said United States Letters Patents and Applications, and is properly allocable to them, and the balance of $713.83 represented the net consideration received for the aforesaid assignment and transfer of said Canadian Letters Patent, and is properly allocable to them.

"The income taxes assessed and levied in the year 1927 upon said sum of $13,562.72, being the net consideration received for the aforesaid assignment and transfer of said United States Letters Patent and Applications, amounted to $406.88, which was regularly and duly paid as aforesaid.

"(6) Said Patents and Applications were of the same value at the time they were issued and filed, respectively, as they were at the time they were sold on the 26th day of July, 1926.

"(7) Said assessments were made by John E. Rose, Jr., commissioner of the revenue, of the city of Richmond, Virginia. Dated Richmond, Va., March 21, 1929."

It is contended by the Commonwealth that the net sum received by Hannaford on account of the sale of the patents constitutes income, and therefore the State can impose an income tax on said sum which amounted to $406.88.

The contention of Hannaford is:

"(1) That Letters Patent of the United States of America are instrumentalities of the Federal government and tax exempt.

"(2) That a tax upon the proceeds of sale of such Letters Patent is a burden upon the exercise of the power of the Federal government to promote the progress of science and useful arts, and invalid; and

"(3) That a tax upon net income in the computation of which the income from, or proceeds of sale of, Letters Patent, are included, is a tax upon those proceeds, and is to that extent invalid."

The first question involved is: Was the money, derived from the sale of the patent, income?

The Virginia Tax Code (Code 1930), section 24, provides:

"The term 'gross income' as used herein, includes gains, profits and income derived from * * * sales or dealings in property, whether real or personal, growing out of the ownership, or use, or interest in such property; * * * but the term 'gross income' does not include the following items, which shall be exempt from taxation under this chapter: * * * (C) the value of property acquired by gift * * *."

The Special Court of Appeals in *Atlantic & D. Ry. Co.* v. *Southern Ry. Co.*, 149 Va. 701, 141 S. E. 770, 772, considered the nature of our income tax, and speaking through Mr. Justice Holt, said:

"The tax so levied 'is not similar to other forms of taxation, since it is not imposed upon property or busi-

ness but upon the proceeds arising therefrom. Black on Income and Other Federal Taxes, §1. An income tax is an assessment upon the income of the person and not upon any particular property from which that income is derived.' " Citing *Young* v. *Ill. Athletic Club*, 310 Ill. 75, 141 N. E. 369, 30 A. L. R. 985.

In *Doyle* v. *Mitchell Bros.*, 247 U. S. 179, 38 S. Ct. 467, 62 L. Ed. 1054, income was held to include "the profit gained through a sale or conversion of capital assets."

In *Merchants' Loan and Trust Co.* v. *Smietank*, 255 U. S. 509, 41 S. Ct. 386, 65 L. Ed. 751, 15 A. L. R. 1305, the same rule was applied in cases where the profits were realized from a sale or conversion by a non-trader in a single isolated transaction, as well as cases where the profits were realized from sales or conversions by one engaged in buying and selling as a business.

The argument of the tax-payer is that the $14,-276.55 (the net sum received from the patents) is not income but represents to that extent the cash value of the patents, and that no part thereof is subject to an income tax.

The answer to the argument is that such a conclusion ignores the question of cost in securing a patent. In sales of property, the cost and the selling price determine the income from the sale. Unless the property sold was derived by gift, the question of value does not enter into the determination of the amount of income. The question then arises: Was the issuance of the patents to Hannaford a gift by the Federal government to him, and, therefore, is it governed by the exceptions set forth in section 24 of the Tax Code?

The issuance of a patent by the Federal government—the only agency in our dual form of government empowered by the Constitution to issue patents—is based primarily on the power of Congress to promote the progress of science. The exclusive right is not a gratuity, but is founded upon a compact with the government, based on a

consideration. As said in *Waterbury Buckle Co.* v. *G. E. Prentice Mfg. Co.* (C. C. A.), 286 Fed. 358, 360:

"A patent is granted by the government in consideration of an exchange for the information or disclosure afforded by the patentee of details of a new and therefore secret improvement in the art, and this disclosure, or information, is embodied in the specifications, the filing of which is a necessary condition precedent to the grant of the patent. The consideration for the grant is a complete disclosure by the inventor of his invention, so that when the statutory right to exclude others from the use of that invention has expired, the public generally may exercise its natural rights to make, use, and sell anything of which it has sufficient knowledge, provided, of course, that this natural right is not temporarily restrained by some other existing patent or permanently restrained for some other legal reason."

In *Kendall* v. *Winsor,* 21 How. 322, 327, 16 L. Ed. 165, it is said:

"It is undeniably true, that the unlimited and temporary monopoly granted to inventors was never designed for their exclusive profit or advantage; the benefit to the public or community at large was another and doubtless the primary object in granting and securing that monopoly."

Our conclusion is that the tax assessed is valid unless inhibited by the Federal Constitution. Resort must therefore be had to the Federal Constitution and the Federal decisions construing its provisions.

Article 1, section 8, clause 8, of the Constitution declares: "The Congress shall have power * * * to promote the progress of science and useful arts by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries; * * *."

Considering the amendatory act of 1793, relating to patents, Chief Justice Marshall in *Grant* v. *Raymond,* 6 Peters 218, 220, 241, 8 L. Ed. 376, 384, thus stated the general purpose for which patents issue:

"To promote the progress of useful arts, is the interest and policy of every enlightened government. * * * This subject was among the first which followed the organization of our government. It was taken up by the first congress * * *. The amendatory act of 1793 contains the same language, and it cannot be doubted that the settled purpose of the United States has ever been, and continues to be, to confer on the authors of useful inventions an exclusive right in their inventions for the time mentioned in their patent. It is the reward stipulated for the advantage derived by the public for the exertions of the individual, and is intended as a stimulus to those exertions. The laws which are passed to give effect to this purpose ought, we think, to be construed in the spirit in which they have been made. * * * The public yields nothing which it has not agreed to yield; it receives all which it has contracted to receive. * * *"

 Basing its ruling upon the case of *Long* v. *Rockwood,* 277 U. S. 142, 48 S. Ct. 463, 72 L. Ed. 824, the trial court held that a patent was an instrumentality of the Federal government and the tax assessed was in violation of the Federal Constitution.

In *Long* v. *Rockwood* the sole question presented was "whether the State of Massachusetts may tax, as income, royalties received by one of her citizens for the use of patents issued to him by the United States." In agreement with the conclusion of the Massachusetts court, that the imposition of such a tax would amount to a tax upon the patent right itself, and, therefore, was prohibited by the Federal Constitution, Mr. Justice McReynolds said:

"The power to exclude others granted by the United States to the patentee subserves a definite public purpose— to promote the progress of science and useful arts. The patent is the instrument by which that end is to be accomplished. It affords protection during the specified period in consideration of benefits conferred by the inventor. And the settled doctrine is that such instrumentalities may not be taxed by the States."

We agree with the conclusion of the trial court that the *Long-Rockwood Case* was conclusive of the question and that it was bound by that decision. However, on May 16, 1932, the Supreme Court of the United States, in express terms, definitely overruled that case in *Fox Film Corporation* v. *Paul H. Doyal, et al.,* 286 U. S. 123, 52 S. Ct. 546, 76 L. Ed. 1010. In the latter case this appears:

"Appellant, a New York corporation which is engaged within the State of Georgia in the business of licensing copyrighted motion pictures, brought this suit to restrain the collection of the State tax upon the gross receipts of royalties under such licenses. The tax was challenged upon the ground that copyrights are instrumentalities of the United States." In holding that the tax was not in contravention of the Federal Constitution, Mr. Chief Justice Hughes said:

"The nature and purpose of copyrights place them in a distinct category and we are unable to find any basis for the supposition that a nondiscriminatory tax on royalties hampers in the slightest degree the execution of the policy of the copyright statute.

"We agree, however, with the contention that in this aspect royalties from copyrights stand in the same position as royalties from the use of patent rights, and what we have said as to the purposes of the government in rélation to copyrights applies as well, *mutatis mutandis,* to patents which are granted under the same constitutional authority to promote the progress of science and useful arts. The affirmance of the judgment in the instant case cannot be reconciled with the decision in *Long* v. *Rockwood,* 277 U. S. 142, 48 S. Ct. 463, 72 L. Ed. 824, upon which appellant relies, and in view of the conclusions now reached upon a reexamination of the question, that case is definitely overruled."

The case at bar is ruled by the decision of the Supreme Court of the United States and the judgment of the trial court is reversed and judgment will be entered in this court in favor of the Commonwealth. *Reversed.*