

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-5051
Re: Whether or not property owned by
foreign governments used for con-
sulate purposes within the State
of Texas is subject to the State,
county and political subdivision
ad valorem taxes.

We are in receipt of your request for an opinion
on the subject contained in your letter, reading as follows:

"I will thank you to advise this department whether
or not property owned by foreign governments used for
consulate purposes within the State of Texas is subject
to the State, county and political subdivision ad valorem
taxes. This request is based upon a request from Laredo,
Texas, on Mexican Consulate property."

Since the question has not heretofore been considered
by the courts of this State nor by this department, we deemed
it of sufficient importance before finally rendering our opinion
to ascertain from the State Department at Washington if there
was any treaty or diplomatic understanding on the subject. We
are in receipt of a letter from Hon. Green Hackworth, Legal
Advisor to the Secretary of State, advising us that no treaty
exists on the matter between our government and the Republic
of Mexico. He advises us, however, that property owned by
our government and used for embassy and consular purposes in
Mexico City is not taxed by the Mexican Government. With
his letter he has kindly submitted copies of opinions of the
Attorneys General from the States of California, Michigan and
Massachusetts considering this question, all holding property
of foreign governments in their respective states used for
governmental purposes free from taxes. We wish to acknowledge
the kindness of Mr. Hackworth and his valuable aid to us in
the consideration of this question.

Honorable George H. Sheppard, Page 2

Our investigation has extended beyond the laws of our own State, and we have not found a case passing directly upon the question contained in your letter. We believe, however, that sufficient analogy exists to the cases we have found to support the conclusion we have reached.

It may be conceded that the language of the Constitution is broad enough to include all property within the jurisdiction of this State as subject to taxation unless expressly exempted by the Constitution and statutes of this State, and that the provision in our Constitution which exempts public property used for public purposes applies only to property owned by the State or some political division thereof. This being true, the question is: Did the framers of the Constitution intend to tax the property of a foreign sovereignty under the circumstances involved here?

As stated in the case of French Republic v. Board of Supervisors of Jefferson County et al., by the Court of Appeals of Kentucky, 252 S. W. 124,:

"In construing the taxation provisions of our Constitution, we should be careful not to overlook the nature of a tax. It is an enforced contribution of money or other property assessed in accordance with some reasonable rule of apportionment by authority of the sovereign state on persons or property within its jurisdiction for the purpose of defraying the public expense."  26 R. C. S., page 13

We take the liberty to quote from this case rather fully, as it more nearly expresses the reasons for our holding than any other case we have found. In this case the State of Kentucky sought to tax a large quantity of tobacco that had been purchased by the French Government for subsequent export to the Republic of France. The French Government resisted the assessment and collection of this tax by the State of Kentucky, and the court in passing upon the question said:

"It is conceded that the French Republic is not suable in our courts without its consent, and that the tobacco itself cannot be subjected to the payment of the tax. Therefore, if the assessment be upheld, we have no way of collecting the tax. We can neither negotiate nor declare war. All that we can do is to ask the State Department to open international negotiations, or persuade Congress to declare war, for the purpose of collecting the tax, thus

Honorable George H. Sheppard, Page 3

presenting a state of helplessness wholly at variance with the sovereign right of taxation.

"In the next place, taxes are imposed on the theory that the taxpayer should pay a portion of the expense incurred in the protection of his person or property, and as applied to ordinary persons and corporations this principle seems eminently fair and just; but as applied to independent nations it is clearly opposed to the spirit of international amity, which should prompt every nation to guard and protect the personal property of all other nations that happens to be temporarily within its jurisdiction, without levying a tribute for that purpose.

"Another consideration not to be overlooked is that the absolute sovereignty of every nation within its own territory does not always extend to foreign nations, but is subject to certain limitations sanctioned by the law of nations and imposed by its own consent. As said by Mr. Chief Justice Marshall in the Schooner Exchange v. McFaddon et al, 7 Cranch 116, 3 L. Ed. 287:

"'A nation would justly be considered as violating its faith, although that faith might not be expressly plighted, which should suddenly and without previous notice exercise its territorial powers in a manner not consonant to the usages and received obligations of the civilized world.'

"Hence, if one nation enters the territory of another with its consent, for the purpose of mutual intercourse, it does so with the implied understanding that it does not intend to degrade its dignity by placing itself or its sovereign rights within the jurisdiction of the other, and we know of nothing more calculated to degrade the dignity of an independent nation than for another to attempt to exercise over it the sovereign right of taxation.

Honorable George H. Sheppard, Page 4

"Moreover, the provisions of our Constitution should be construed in the light of history and the uniform dealing of one power with another. So far as we are aware, no state and no nation, at the time of the adoption of our Constitution, had ever assumed the right to tax the personal property of a foreign power that happened to be temporarily within its jurisdiction. Indeed, there were numerous treaties exempting ordinary consuls from personal taxation, unless they were citizens and owned real estate, or were engaged in business where the consulate was situated. United States Consular Regulations 1896, § 63; 7 Ops. Attys. Gen. 18. Therefore we are constrained to hold that the framers of our Constitution did not intend to inaugurate a policy so opposed to international usage, so incompatible with the dignity of independent nations, and so likely to result in the loss of the good will of those whose friendship we have always prized. As the property was not taxable, it should not have been assessed.

". . ."

It is true that this case involved personal property, but we do not regard this fact sufficient to change the reason underlying the exemption as expressed in this case as it would apply to real property.

It is further noted that this case advances as one reason for the exemption the impracticability of collecting taxes by one government from another sovereign government by any legal process. True, this does within itself afford a reason for the exemption, but we are impressed with the broader principles upon which the court based its decision, namely, the observance and maintenance of amiable international relations.

We take it that regardless of the various ways a rule of international law may arise, one of the most satisfactory methods would be by the mutual recognition of its existence between the governments concerned. Since the Republic of Mexico has accorded freedom from taxation to the property of our government used for its embassies and consular offices in Mexico City, this alone would in our opinion afford the most

Honorable George H. Sheppard, Page 5

laudable reason for the exemption from taxation by our State and the various political subdivisions thereof of the property of the Mexican Government located in our State used for offices and housing of its diplomatic representatives. We should recognize this as a binding obligation upon us under international usage and international law. The Paquete Havana, 175 U. S. 677, 700; Skiriotes v. State of Florida, 313 U. S. 69, 72 L. Ed. 824, 827.

In the case of Mason v. Intercolonial Railway, 197 Mass. 349, mention is made of the theory of impracticability of one sovereign state enforcing the collection of taxes against another, stating:

"... But the rule upon which these decisions are based goes much deeper than a refusal to assert mere judicial jurisdiction. It involves a waiver of all sovereign power. If a nation permits a foreign sovereign or his official representatives to enter the territory of that nation or to hold property therein, it impliedly consents that all sovereign rights of such foreign nation shall be recognized. One of these essential rights is independence of every other sovereign. For the Commonwealth to impose a tax upon the property of any sovereign within its borders would not only be exercising a jurisdiction to interfere with the rights of that sovereign in such property, but would be taking the further step of attempting to impose an obligation upon such sovereign to contribute towards the public expenses of the Commonwealth. It would be asserting a jurisdiction more fundamental in character, even, than judicial jurisdiction. In my judgment, the tax statutes of the Commonwealth must be read in the light of these principles, and when so read, they must be construed as not asserting any power to tax which is at variance with them."

We find the following in the case of Briggs v. Lightboats, 11 Allan 157, 184:

"The jurisdiction of each independent nation is necessarily exclusive and absolute within its own territory. However, by common consent among civilized nations, a consent largely implied from common usage and the necessities of mutual intercourse, that absolute jurisdiction

167

is not asserted against foreign sovereigns or their sovereign rights. Whether this be called a rule of comity or of law, it has become a settled principle of international relations which has long been recognized by the Supreme Court of the United States. Schooner Exchange v. M'Faddon, 7 Cranch, 116. It is well settled that the courts of one nation will assert no jurisdiction either against the person or the property of a foreign sovereign. Briggs v. Lightboats, 11 Allan, 157, 184."

It is apparent from the foregoing that we are of the opinion that property situated in this State, which is owned and used by the Republic of Mexico for governmental purposes, whether real or personal, is not subject to ad valorem taxes by this State or any political subdivision thereof, and you are accordingly so advised.

Yours very truly

APPROVED APR 2, 1943

ATTORNEY GENERAL OF TEXAS

FIRST ASSISTANT
ATTORNEY GENERAL

By

D. D. Lollar
Assistant

LPL: AMM

APPROVED
OPINION
COMMITTEE